THE PEOPLE OF THE STATE OF NEW YORK ex rel. CON-WAY COMPANY, Appellant, *v.* THOMAS M. LYNCH et al., Constituting the State Tax Commission, Respondents.

(Argued November 20, 1931, decided January 5, 1932.)

*Ralph Royall* for appellant. The losses of relator were ascertained in the year 1928 upon its investments in

Conway Realty Company and Conway Securities Company and should be allowed as deductions in determining the net income of relator for the purpose of a determination of the tax. (*People ex rel. Standard Oil Co.* v. *Law*, 237 N. Y. 142; *People ex rel. Barcalo Mfg. Co.* v. *Knapp*, 187 App. Div. 89; 227 N. Y. 64; *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398; *Joslyn Mfg. & Supply Co.* v. *Commissioner*, 6 B. T. A. 749 [A]; *Sheridan Meat Co.* v. *Commissioner*, 10 B. T. A. 211 [A]; *Royal Packing Co.* v. *Commissioner*, 22 Fed. Rep. [2d] 536; *Pearsall* v. *Commissioner*, 10 B. T. A. 467 [A]; *Conover Co.* v. *Commissioner*, 7 B. T. A. 1234 [A]; *State Bank* v. *Commissioner*, 11 B. T. A. 410; *DeLoss* v. *Commissioner*, 28 Fed. Rep. [2d] 803; *Myers* v. *Commissioner*, 7 B. T. A. 1072; *Lee* v. *Commissioner*, 8 B. T. A. 951; *American Sav. Bank & Trust Co.* v. *Burnett*, 45 Fed. Rep. [2d] 548; *Selden* v. *Heiner*, 12 Fed. Rep. [2d] 474; *People ex rel. Studebaker* v. *Gilchrist*, 244 N. Y. 114.)

*John J. Bennett, Jr., Attorney-General (Wendell P. Brown* of counsel), for respondents. The tax was properly computed upon the basis of the relator's entire net income, without deduction of losses on account of its investments in stocks of its subsidiaries. The losses were not established in 1928. (*United States* v. *White Dental Mfg. Co.*, 274 U. S. 398; *Weiss* v. *Wiener*, 279 U. S. 333.)

LEHMAN, J. The relator was organized in 1905 under the laws of the State of New Jersey. It has maintained an office in that State in order to comply with the requirements of the New Jersey law. It has never conducted any business in that State. Through wholly owned subsidiary organizations, in the form either of Massachusetts trusts or Massachusetts corporations, it conducted the business of manufacturing and selling pianos, discounting "piano paper" and similar activities, and maintained one or more offices in that State until the year 1926. In 1926 the corporation decided to liquidate

the subsidiary corporations through which it conducted its piano business. At the beginning of 1928 the only subsidiary organizations, which had not been liquidated, were the Conway Realty Company and the Conway Securities Company. Then the relator moved its office to the city of New York and obtained a certificate of authority to do business here. From that office it continued the liquidation of its subsidiary organizations and bought and sold investment securities. From sales of these securities, and dividends and interest, it derived in 1928 an income of $1,061,191.67, as reported to the Federal government. None of the income was derived from the subsidiaries in liquidation. Losses sustained by these subsidiaries were shown on the consolidated balance sheet included in the income tax reports and were allowed in assessing the Federal tax on the relator's income.

The Tax Law of this State (Cons. Laws, ch. 60, § 209) provides in part that " * * * for the privilege of doing business in this state, every foreign corporation, * * * shall annually pay * * * an annual franchise tax, to be computed * * * upon the basis of its entire net income, as defined in subdivision three of section two hundred and eight * * * which entire net income is presumably the same as the entire net income which such corporation is required to report to the United States * * *." Section 208, subdivision 3, provides: " The term ' entire net income ' means the total net income, including all dividends received on stocks and all interest received from federal, state, municipal or other bonds * * * and without deduction for taxes paid to the government of the United States * * *, but losses sustained by the corporation in other fiscal or calendar years whether deducted by the government of the United States or not shall not be deducted." The relator claims that during the year 1928 it sustained a loss of $488,865.53 upon its investment in Conway Realty Company, and a loss of $139,350.08 upon its investment in Conway

Securities Company and that these losses should be deducted from its total gross income, as reported to the United States, before the tax is assessed. That deduction has been refused. The question here presented is whether such losses or any part of them were sustained during the year 1928. The accuracy of the balance sheet annexed to the report to the United States, as explained and amplified by the relator, has not been attacked, and no evidence has been offered to controvert the evidence produced by the relator.

The Conway Realty Company was organized in 1923. The relator conveyed to it a manufacturing plant at Worcester, Mass., in which the relator had invested $593,169.69, and the relator received all the capital stock of the Realty Company. Thereafter the Realty Company purchased land in Boston and issued bonds secured by a mortgage in the amount of $600,000 on both the Worcester and Boston real estate. The proceeds of the bond issue were used for the construction of a plant on the Boston real estate. The Realty Corporation during the years 1923–26 made a net profit of $102,434.75. In 1926 it sold the Boston plant for $600,000, $250,000 of which was paid in cash, and the remainder by a purchase-money mortgage of $350,000 which was intended to cover the assumption by the purchaser of a proportionate part of the bonds secured by the mortgage on both the Worcester and Boston plants. Then the Realty Company declared a dividend of $250,000. At least to the extent that this dividend represented a distribution of the proceeds of the assets of the corporation and not a distribution of profits previously earned, it reduced *pro tanto* the original investment of the relator in its subsidiary corporation.

The $600,000 bond issue of the Realty Corporation was sold at a discount of ten per cent and to offset this discount the relator paid to the Realty Company the sum of $60,000, and this sum was carried on the books

of the Realty Corporation as a " deferred charge." The relator also made advances to the Realty Company on " open account." At the close of the year 1928 these advances aggregated $35,900.14. Including moneys loaned or advanced, the relator had invested in the Realty Company the sum of $689,069.83, and had received only the dividend of $250,000 either as profits or repayment of its investment.

At the beginning of the year 1928 the liquidation of the Conway Realty Company was not completed. It still owned the plant at Worcester and other assets. If the company sold the plant at its cost price or book value, it would have assets sufficient to pay to the relator the full amount of its investment and loans. In 1928 it sold the plant for the sum of $176,000. Then its remaining assets consisted only of cash items and the amount unpaid upon the second mortgage given on the sale of the Boston property. Under no circumstances could these assets when finally liquidated produce more than their face value, and after the outstanding bonds of the Realty Company and some small debts to others than the relator were paid, at most the sum of $52,639.05 would be available to meet the deferred charge of $60,000 and the loans on open account of $35,900.14, payable to the relator before there could be any distribution on the relator's capital stock. Thus it had become evident that the relator's stock was entirely without value and that, in addition, there must be a loss on the moneys it had advanced to its subsidiary.

Deduction of the loss has been denied on the ground that it does not appear that the loss has been sustained during the year 1928. It is urged that the Legislature intended that, when a foreign corporation receives authority to do business here, it must pay a tax based on the net income enjoyed while it is doing business here, and that, even though its net income may be reduced by losses sustained during the same period, the loss on an invest-

ment cannot exceed the difference between the value of the investment at the time the corporation began to do business here and its value at the end of the year when it is claimed the loss was sustained. We cannot give to the words " net income " other than the statutory definition, and the statutory definition applies, by express terms of the statute, alike to foreign corporations and to domestic corporations.

The meaning of the statutory definition of net income is clear. The working rule for its application has been authoritatively stated: " Take the gross income as defined by the Federal statute. Deduct from it proper business charges except the United States taxes specified and losses of other fiscal years. The result is the entire net income as intended by our statute." (*People ex rel. Standard Oil Co.* v. *Law*, 237 N. Y. 142, 149.) Aside from the specified exceptions, the " entire net income " is presumably the same as the entire net income reported to the United States. Both gross income and net income, except as otherwise provided in our own statute, must be calculated in accordance with the definitions contained in the United States statute. Gains reflected in the gross income must be calculated in the manner authorized by the United States statutes, and losses reflected in the " net income " must be similarly calculated. No loss upon an investment or debt is sustained until that loss is definitely established. At the beginning of 1928 the Conway Realty Company still owned the Worcester plant, and its value in liquidation could not be definitely determined. Perhaps a reasonable estimate of its value would have been much lower than its cost or book value, and not more than was actually received upon its sale. Nevertheless the value of the assets of the Realty Company and consequently the value of the relator's investment in that company rested solely on estimate. The relator's ultimate loss might be more or less than the estimate. At that time no deductible loss had been

suffered. " While the security remains *in esse* and its value may fluctuate, it is well settled that only by a sale can gain or loss be established." (*DeLoss* v. *Commissioner of Internal Revenue*, 28 Fed. Rep. [2d] 803, 804.) When the relator began to do business in this State the value of its investment might still fluctuate; the principal factor in its value was still variable; but " the loss must be actual and present, not merely contemplated as more or less sure to occur in the future." " The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer." (*Weiss* v. *Wiener*, 279 U. S. 333, 335.) If the Legislature had chosen to provide that the gross income of a foreign corporation should include only gains above the *estimated* value of its investments at the time the corporation began to do business here; and that losses, deductible from the gross income to arrive at the net income, should include only losses upon the *estimated* value of the investment, the tax payable would sometimes be higher and sometimes lower than under the present statute. We are governed by the terms of the statute and no economic theories can alter its plain terms. It follows that the relator may deduct from his gross income losses definitely and irretrievably sustained in 1928.

At the end of that period the relator's stock was valueless and could by no possibility acquire any value. Only by concealment of the true condition of the corporation could the relator have obtained any price for it. A sale for a purely nominal consideration could not fix the loss on the stock more definitely than the liquidation of the assets of the corporation to the point where the corporation had on hand only money or choses in action for money in an amount less than the relator had advanced to the corporation. The rule that only by sale can gain or loss be established is " inapplicable when the security

can no longer fluctuate in value, because its value has become finally extinct. In such cases a sale is necessarily fictitious; it establishes nothing, and cannot be intended to do so, for there is no variable to determine." (*De Loss* v. *Commissioner of Internal Revenue, supra,* at p. 804.)

Though the relator's investment in the stock of the Conway Realty Company had become worthless on December 31st, 1928, the liquidation of that corporation had not yet proceeded so far that the amount of the loss on moneys advanced by the relator could be definitely fixed. The amount ultimately applicable to the payment of these moneys might depend upon the ability of the corporation to collect obligations due to it; but, in effect, all that is left of the relator's claim for repayment of loans and advances is a right to apply upon that claim the moneys which may be collected by the Realty Company. In no event could the loss be less than $43,261.09. To that extent the relator had definitely suffered a loss upon its loans and advances, and that loss cannot be retrieved.

The question still remains to what extent the relator's original investment in the stock of its subsidiary corporation has been reduced by the dividend of $250,000 received in 1926. The dividend was not a regular dividend paid out of the profits of the corporation. It represents the exact amount received in cash upon the sale of the Boston plant, and, at least in part, is a distribution of capital assets. The Tax Commission was bound to apply the entire dividend in reduction of the relator's investment unless the relator furnished data which showed what definite part, if any, constituted a distribution of profits earned. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346.)

The relator states that the corporation earned profits of $102,434.75 during the years 1923–26. Even if that be true, it does not follow that the dividend included a distribution of these profits. The corporation received

for the sale of $600,000 bonds only $540,000. The difference became a deferred charge against the corporation and was advanced by the relator. Eventually that charge must be met out of corporate gains and a distribution of gains without provision for taking care of the deferred charge would leave the corporation without means of meeting the charge except by encroachment upon capital. There are other circumstances which tend to rebut any inference that any part of the dividend came from profits. Certainly we cannot upon the record hold that any definite portion must be ascribed to profits. It follows that the entire dividend must be applied upon the relator's capital investment. That leaves the investment in the stock at $343,169.69. It sustained a loss of this sum in 1928 and also a loss on moneys advanced of $43,261.09. That loss of $386,430.78 must be deducted from the gross income of the corporation.

In general, the right to deduct the claimed loss upon the relator's investment in Conway Securities Company, a Massachusetts corporation, is governed by similar considerations. The original investment was $800,000. The company never distributed any profits to the relator as holder of all the certificates of beneficial interest, and any surplus from profits earned prior to 1927 was wiped out by losses in that year. The relator itself conducted the liquidation of the Securities Company. In the course of that liquidation it paid itself the sum of $445,222.39 in 1927. That reduced the relator's investment to the sum of $354,777.61. By payment in 1928 of the sum of $186,520.76, the relator's investment was reduced to the sum of $168,256.85. Then liquidation had been so far completed that the company then held only $6,968.48 in cash, and $49,579.38 in fixed obligations payable. Against the amount which might ultimately be collected upon the fixed obligations, the Securities Company owed the sum of $27,368.91. There remains for payment to the relator upon the company's certificates of beneficial

interest at most the sum of $28,906.77. Thus it appears that the relator has lost at least the sum of $139,350.08 upon its investment. The loss may be greater if the remaining obligations due to the Securities Company are not paid in full; it cannot be less. To that extent the loss is realized and not merely reasonably anticipated. The question remains whether it has been " sustained " during the year 1928.

Ordinarily the loss of an investor in stock or certificates of ownership in a corporation or other artificial entity is sustained only when the loss is definitely and irrevocably fixed, but the " general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." (*Lucas* v. *American Code Co.*, 280 U. S. 445, 449.) So long as reasonable possibility remains that an anticipated loss may not be realized, it is not sustained within the meaning of the Tax Law. The difficulty is in determining when such reasonable possibility disappears. A corporation may have incurred losses which reduce its capital; those losses may be reflected in the market value of its stock; yet so long as the corporation continues to do business and there is a market for its stock, there is possibility that one who has invested in its stock may either by improvement in the corporate business or fluctuations in the market value of the stock recoup in whole or in part any anticipated loss in his investment. Even after a corporation has ceased to do business and is liquidating its assets, as long as it retains any assets whose value in liquidation depends upon the price that can be obtained upon a sale, there is a variable factor which precludes a determination that any definite part of the investment has been irrevocably lost.

True, even with that variable factor taken into consideration, the taxing authority may be able to determine that some loss is inevitable, yet when the variable factor affects the *amount* of the inevitable loss, it may be difficult or even impossible to devise a practical test to determine

that any definite part of that loss has been sustained till by complete liquidation or sale the loss is definitely established. We are not dealing with such a situation. Here the relator as the sole owner of the corporate entity is directing the liquidation of its assets. No variable factor enters into the determintion of the amount of loss which is inevitable. The amount which is ultimately payable upon the fixed obligations which it holds measures and definitely limits the amount which can in any possible contingency be applied on relator's investment. An allowance is made in the balance sheet in the form of a reserve of $22,210.44 for uncollectible debts. It is often sound business accountancy to establish a reserve to provide for contingencies which can be reasonably anticipated. The data furnished the Tax Commission are insufficient to determine whether the reserve set up is reasonable. Even if reasonable, it represents an anticipated rather than a realized loss and the Tax Commission could exercise its discretion in refusing to deduct the reserve from the uncollected obligations, if, indeed, it was not required to do so. (*Lucas* v. *American Code Co.*, 280 U. S. 445.) Nevertheless the Commission was bound to find that in these circumstances the relator had sustained a definite loss of at least $139,598.84 on its investment in the Securities Company.

In determining whether that loss was sustained in 1928 it must deduct the loss, definitely determinable by the same rules, prior to the beginning of the year. Without now setting forth the details of the balance sheet as of December 31st, 1927, we find that it fails to show that there was any possibility that more than $313,760.10 could be applied upon the relator's investment upon final liquidation, even according to the relator's own estimate, and certainly the Tax Commission might accept that estimate as an admission against interest. The relator has received $186,520.76. Thus the loss sustained in 1928 on the relator's investment in the Securities

Company is the difference between $215,178.77 and $313,760.10, or $98,332.57.

The franchise tax of the relator should be fixed by deducting from the gross income of the relator the loss of $98,332.57 upon its investment in the Securities Company and the loss of $386,430.78 upon its investment in the Realty Company sustained during the year 1928.

The order of the Appellate Division should be reversed, with costs in the Appellate Division and in this court, and the proceedings remitted to the State Tax Commission with directions to fix the franchise tax in accordance with this opinion.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.