THE PEOPLE OF THE STATE OF NEW YORK ex rel. JONATHAN W. HULL and WILLIAM HAROLD CARPENTER, as Surviving Executors, etc., of WILLIAM S. HULL, Deceased, Petitioners, against MARK GRAVES and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 7, 1942.

*John A. Dutton* [*John A. Dutton* and *Charles J. Eignor* of counsel], for the petitioners.

*John J. Bennett, Jr., Attorney-General* [*John H. Spain* and *Wendell P. Brown, Assistant Attorneys-General*, of counsel], for the respondents.

FOSTER, J. This is a proceeding to review a final determination of the State Tax Commission which affirmed the assessment of an additional tax, amounting to $1,456, against William S. Hull, who died in 1938. The issue involved is whether decedent was entitled to deduct $18,200 from his gross income in 1936 on the basis that capital stock which he owned in the Primal Realty Corporation had become worthless in that year. The following facts are fairly established:

In 1920 the decedent and four other individuals formed a syndicate which purchased several parcels of real estate on Eighth avenue in the city of New York. An additional and contiguous parcel was purchased in 1926. The total purchase price of these properties was $159,500, and they were taken subject to mortgage liens amounting to $121,500. The total cash outlay for the purchases, of which decedent paid one-third, was $38,000. Prior to December 5, 1928, the mortgages had been reduced to $103,000 by payments of cash amounting to $18,500. About that date the Primal Realty Corporation was formed, and it purchased from the syndicate the real estate in question for $157,500, subject to mortgages amounting to $103,000. The difference, plus the addition of $100 in cash, or the sum of $54,600, was fixed as the capitalized value of the new company, and against this value of $54,600 there were issued 640 shares of capital stock at the par value of $100 each, of which the decedent received 182 shares. The shareholders were the same parties who were members of the syndicate, and the new entity merely marked a transition into corporate form. The capitalization of the new corporation was roughly equal to the total cash outlay of the syndicate members on the purchase price and for payments on the mortgages. The capital value of decedent's shares amounted to $18,200, and this was the amount claimed as a loss for the year 1936.

In addition to being a stockholder in the corporation decedent held mortgages on four of the parcels involved. The face value of these mortgages is given at $64,000. By December 31, 1936, he had paid arrears in taxes on these properties to the extent of $15,079.50. The holders of two other mortgages on two other

parcels had also paid arrears in taxes. As of the date mentioned the total indebtedness against all of the parcels by way of these mortgages and taxes paid by the mortgagees amounted to $112,455.50, exclusive of any interest, while the appraised value of all the properties was only $92,000.

These figures, in conjunction with the fact that the corporation had been operating at a loss for some time, lead to the inescapable conclusion of insolvency unless the appraisal value is rejected, and we do not find that it was rejected or disregarded by the Tax Commission. The decision was apparently based on other grounds. Indeed, it was even conceded that the real property owned by the corporation had depreciated in value for a number of years. There were plausible and convincing reasons for this depreciation, chief of which were a change in the social complexion of the neighborhood and the fact that the buildings were outmoded and illegal for tenement house purposes, and the city authorities had filed violation notices against them. These matters are not disputed, but the Tax Commission has taken the position that the evidence fails to show the correct value of decedent's stock in the corporation and generally that it also fails to show identifiable events fixing a loss for the year 1936. In connection with the latter proposition two somewhat inconsistent theories are presented: *First*, that the stock became worthless before 1936, and, *second*, it did not become worthless in 1936 because the corporation was not then dissolved and functioned thereafter in leasing the properties.

We think a realistic view of the situation sustains the claim made in behalf of decedent. Aside from the facts already mentioned, there was proof of certain identifiable events sufficient to fix the loss as of 1936. The stockholders in 1936 refused to put any more money into the empty coffers of the corporation which had been operating at a loss for some time. They virtually abandoned possession of the properties to the respective mortgagees, who collected the rents and carried the same to the account of each respective mortgagee. It is true that two of the mortgagees received assignments of the rentals from properties covered by their mortgages in 1935, but assignments relative to other parcels were not made until 1936. The notices of violations pursuant to the Multiple Dwelling Law were filed in 1936, and there was then no money to make the required alterations so as to comply with the law.

As against these conditions, which revealed a hopeless condition in 1936, there were no events in prior years of such a calamitous nature. The existence of an operating loss and a deficit as shown on the books in former years would not necessarily be sufficient

to justify a claim for a capital loss. Some flexibility must be allowed where liquidation is not practical and there is any reasonable basis for the hope of better conditions in the future. (*Morton v. Commissioner of Internal Revenue*, 38 B. T. A. 1270.) An individual should not be penalized for his inability to divine with hairsplitting accuracy the precise moment when his capital assets became worthless, especially when dealing with a period of depression such as existed between the years 1932 and 1936. In this case the hopelessness of the corporation's financial situation was not revealed with finality until the events of 1936 occurred.

There is no requirement that a corporation must divest itself of title to its real property by liquidation or otherwise in order to sustain the claim that its capital stock is worthless. (Tax Law, § 360, subd. 5.) Such, indeed, would ordinarily be one of the methods adopted, but the test called for is a practical one and not one of legal rigidity. (*People ex rel. Conway Co.* v. *Lynch*, 258 N. Y. 245.) Viewed in this light we fail to see how the lack of an attempt to liquidate the properties of the corporation, or the failure to dissolve the latter, affects in the slightest degree the practical proposition that the corporation was insolvent and its stock worthless in 1936.

If this view of the matter is taken, decedent's loss was the cost of the stock to him when he acquired it. We find no requirement in the Tax Law placing a burden on his representatives to prove the market value of the same at the time of acquisition. The statute itself does not so state and no decisions are called to our attention which hold to that effect. The cost price, however, was proven on the basis that stock was issued in exchange for the cash paid in for the properties by each member of the syndicate prior to the formation of the corporation. No other fair inference is possible. While decedent held mortgages on some of the properties this fact in no way involves the cost of the corporate stock to him because the proof shows that he paid full face value for the mortgages.

For the foregoing reasons we feel that the loss claimed by decedent for the year 1936 is fully supported by the proof in the record before us, and that the determination of the State Tax Commission is not sustained by the law or the facts. The determination should be annulled and a direction made that the additional amount levied should be refunded to petitioners, with interest and costs.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Determination annulled on the law and facts and respondents are directed to refund to petitioners the additional amount levied, with interest and costs.