THE PEOPLE OF THE STATE OF NEW YORK ex rel. JONATHAN W. HULL et al., as Executors of WILLIAM S. HULL, Deceased, Respondents, against MARK GRAVES et al., Constituting the State Tax Commission, Appellants.

Argued May 1, 1942; decided October 29, 1942.

*John J. Bennett, Jr., Attorney-General* (*John H. Spain* and *Wendell P. Brown* of counsel), for appellants. The Tax Commission properly determined that the additional assessment of income tax was valid. (*People ex rel. Kohlman & Co.* v. *Law* 239 N. Y. 346; *People ex rel. Conway Co.* v. *Lynch*, 258 N. Y. 245; *Lucas* v. *American Code Co.*, 280 U. S. 445; *People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49; *Sullivan* v. *Rosson*, 223 N. Y. 217; *Commissioner* v. *Hoffman*, 117 Fed. Rep. [2d] 987.)

*John A. Dutton* and *Charles J. Eignor* for respondents. To entitle a taxpayer to a credit for loss of corporate stock, it is not necessary to show that the corporation has been dissolved or has been declared bankrupt or has parted with title to its property. (*People ex rel. Conway* v. *Lynch*, 258 N. Y. 245; *Hancock* v. *Commissioner of Internal Revenue*, 105 Fed. Rep. [2d] 153; *Commissioner* v. *Hoffman*, 117 Fed. Rep. [2d] 987.) There were no identifiable events or other factors which would have justified the deduction of the loss in any prior year. (*Morton* v. *Commissioner*, 38 B. T. A. 1270). The petitioner's loss is allowable under subdivision 5 of section 360 of the Tax Law (Cons. Laws, ch. 60). (*Witschger* v. *Marvin & Co.*, 255 App. Div. 70.)

DESMOND, J. Petitioners, as executors of the will of a deceased resident of this State, brought this proceeding in the nature of certiorari under article 78 of the Civil Practice Act, and sections 199 and 375 of the Tax Law (Cons. Laws, ch. 60), to review a determination by the State Tax Commission. The Commission's determination was that petitioners' testator had not been entitled to a deduction in the amount of $18,200, which he had claimed on his State income tax return for 1936. The disputed deduction was for a loss on stock of Primal Realty Corporation owned by decedent and which stock, he claimed in his return, had become worthless in that year.

The testimony shows: in 1920 and 1926 decedent and four others purchased six adjoining houses for a total price of $159,500, of which $121,500 was in mortgages assumed (one mortgage on each house), the balance of $38,000 in cash. Payments on these mortgages had reduced their principal amount to $103,000, when, in 1928, the properties were conveyed to the newly-formed Primal Realty Corporation, which issued $54,600 in stock, representing the equities in the houses, to the " syndicate " members, $18,200 thereof going to decedent. By 1936, the unpaid principal of the mortgages had been reduced to $95,000. Four of these mortgages, on which there was $64,000 in unpaid principal, were held by decedent, individually. These six houses were the Primal Corporation's only asset. There were in 1936 tax arrears on the six houses, for the years 1931–1936, amounting to about $19,000, indicating that the corporation had been in financial straits for some time back. The corporation's stockholders would not put up any new money, so it was thought advisable to assign the rents on each house to the respective mortgagees. No deeds were given, however, and title to the properties remained in the corporation, which was not dissolved. The assignment of rents to decedent was given in 1936, the assignments to the other mortgagees in 1935. Decedent in 1936 paid up about $15,000 in back taxes on the four dwellings covered by his four mortgages. Certain " violations " of the Multiple Dwelling Law (Cons. Laws, ch. 61-A) had been filed against all the properties in the summer of 1936; to correct the conditions described in these " violations " an outlay of about $12,000 would have been required. At the end of 1936 the total indebted-

ness against the properties, including taxes advanced by mortgagees, was $112,455. There was offered in evidence an appraisal, made in 1940, but as of 1936, valuing the six houses at $92,000. It is to be noted, however, that this appraisal did not say that values were greater than $92,000 in the years before 1936. Thus the appraisal, while it remains undisputed in the record as to 1936 value, is not of much help on the question here — whether this stock *became worthless in 1936*. The properties were carried on the corporation's books in 1936 at the price paid for them, $157,500. The rents fell, during the period 1929–36, from $28,500 to $16,300, but this drop was at a steady rate from 1929 to 1934; actually there were increases in 1935 and 1936. There were operating losses during several of these years. The appraisal states no basis for its figures, except rents; if based solely on rents, the value of the houses would have been no lower in 1936 than in 1933, 1934 and 1935.

The hearing resulted in a determination by the State Tax Commission that the assessment was correct, and that the claimed deduction was not allowable. On review the Appellate Division unanimously annulled the Tax Commission's determination " on the law and the facts." That court's opinion says that " a realistic view of the situation sustains the claim made in behalf of decedent," and that there were " certain identifiable events sufficient to fix the loss as of 1936." (263 App. Div. 223, 225.) Those events were, according to the opinion, the refusal of stockholders in that year to put up more money, the " virtual abandonment " of the properties by rent assignments, the notices of violations, etcetera.

Section 360, subdivision 5 of the State Tax Law, allows as a deduction any loss sustained during the taxable year, in a transaction entered into for profit, though not connected with the taxpayer's trade or business. The State Tax Commission's regulations as they stood in 1936 (art. 154, now 487-d) allow deduction " only in the year in which the stock became worthless, provided a satisfactory explanation of the worthlessness be made." The test, this court said in *People ex rel. Conway Co.* v. *Lynch* (258 N. Y 245), is a practical one and one way of showing worthlessness, although not the only way, is by liquidation. If there be no liquidation the question is one of fact: did the stock cease to have value. or

suffer a definite loss of value, in the particular tax year? " Ordinarily the loss of an investor in stock or certificates of ownership in a corporation or other artificial entity is sustained only when the loss is definitely and irrevocably fixed." (*People ex rel. Conway Co.* v. *Lynch, supra,* p. 255.) Here the corporation had not parted with title to its properties despite losses. It assigned the rents to the mortgagees as further security. Leaving the title in the owner corporation, and keeping the corporation alive, can be taken as some proof that there was a lingering hope that values which had fallen might rise again to heights beyond the mountainous liens.

The courts in these cases have a limited power of review only. Section 199 of the Tax Law does say that the determination of the Tax Commission " may be reviewed both upon the law and the facts," but the meaning of that phrase has been settled by a number of decisions of this court. The identical provision for a review " both upon the law and the facts," appearing in the statute (L. 1889, ch. 463, reenacted L. 1896, ch. 908) which was the predecessor of section 199 of the Tax Law, was construed to mean that the determination of the Comptroller, who was then the taxing officer, was not to be disturbed by the courts, " unless clearly shown to have been erroneous." (*People ex rel. American Contracting & Dredging Co.* v. *Wemple,* 129 N. Y. 558, 565; *People ex rel. Roebling's Sons, Co.* v. *Wemple,* 138 N. Y. 582, 587; *People ex rel. Western Electric Co.* v. *Campbell,* 145 N. Y. 587, 591; *People ex rel. United Verde Copper Co.* v. *Roberts,* 156 N. Y. 585, 590; *People ex rel. Commercial Cable Co.* v. *Morgan,* 178 N. Y. 433, 440.) The same rule is applied in the recent case of *Matter of Calder* v. *Graves* (261 App. Div. 90, 94, 95; affd., without opinion, 286 N. Y. 643).

There is in this record substantial support for the Commission's determination that the taxpayer had not shown that the loss was " definitely and irrevocably fixed " (*People ex rel. Conway Co.* v. *Lynch, supra*) in 1936. A determination that the taxpayer had *never* sustained a loss on this stock would, of course, be against the very great weight of evidence to the contrary. But the issue here is as to the *year* of the loss, and the finding that the loss is not shown to have occurred in the particular year of 1936, is not against the overwhelming weight of evidence. In short, it cannot be said that the Tax Commission's determination was " clearly erroneous."

The order of the Appellate Division should be reversed, and the determination of the State Tax Commission confirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., FINCH and LEWIS, JJ., concur; LOUGHRAN, RIPPEY and CONWAY, JJ., dissent.

Ordered accordingly.