In the Matter of CHARLES C. HUITT, as Executor of FINLEY J. SHEPARD, Deceased, Petitioner, against CARROLL E. MEALEY et al., Constituting the State Tax Commission, Respondents.

Third Department, June 30, 1943.

Charles A. Roberts (Robert O. Muller of counsel), for petitioner.

Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Wendell P. Brown and Henry S. Manley, Assistant Attorneys-General, of counsel), for respondents.

MEMORANDUM BY THE COURT. This is a proceeding under article 78 of the Civil Practice Act to review a determination of the State Tax Commission, made upon an application of Finley J. Shepard for revision of an assessment of $3,106.23 income tax for 1933 on account of disallowance from normal tax calculation of $100,000 "loss of investment in Pierre Hotel Inc. Debenture Bonds."

The financing of this hotel involved, besides taxes and the ground rental, two bond issues aggregating $9,750,000. The first mortgage bonds totaled $6,500,000 and were disposed of through S. W. Straus & Co., Inc., and bore six and one-quarter per cent interest. The junior issue, known as the "debentures," totaled $3,250,000 and bore coupons of six per cent interest semi-annually, payable out of net earnings. The taxpayers investment was in the debentures.

Construction of the hotel was commenced in June, 1929, and completed in September, 1930. During the first six months of 1931 the hotel's income was in excess of its operating costs but not sufficient to pay the taxes and ground rent. The interest payments on the Straus bonds were paid up to June 1, 1931, from sources outside of operating revenue of the hotel. The petitioner and other debenture holders never received any interest payment. On May 29, 1931, the debenture holders received a notice of a special meeting and about the same time a bondholders' committee of the Straus bonds was organized.

In September, 1931, a foreclosure or equity receivership was commenced on behalf of the Straus bondholders. On March 7, 1932, the Hotel Pierre, Inc., filed a voluntary petition in bankruptcy. On June 1, 1932, the bondholders' committee for the Straus bonds agreed upon a plan of reorganization which was communicated to the Straus bondholders by that com-

mittee on June 8, 1932, and about the same time the debenture holders were notified of it by a letter from one Parsons, chairman of their committee. As to the petitioner and the other debenture holders the plan was for cash subscriptions to bonds of a new company at the rate of $100 for each $1,000 worth of debentures held and subscriptions were not accepted after September 7, 1932.

The petitioner had been notified that unless he and the other debenture holders subscribed and paid for bonds in the new company they would receive nothing under the new reorganization plan. The petitioner did not subscribe or pay for bonds in the new company and therefore after September 7, 1932, there was no value as the record shows in his debenture bonds.

There was an item of $1,458 which the petitioner has deducted for charitable contributions which had been allowed by the Bureau of Internal Revenue. This item was not allowed by the State Tax Commission but upon the oral argument they conceded that the taxpayer was entitled to it.

Determination of the State Tax Commission modified so as to allow petitioner a deduction for charitable contributions amounting to $1,458, thereby reducing the assessment in controversy from $3,106.23 to $3,018.75 and determination of the State Tax Commission as modified confirmed, with fifty dollars costs and disbursements.

CRAPSER, BLISS and HEFFERNAN, JJ., concur; SCHENCK, J., dissents, in an opinion in which HILL, P. J., concurs.

SCHENCK, J. (dissenting). This proceeding, instituted under article 78 of the Civil Practice Act by Finley J. Shepard, following whose death his executor has been substituted as petitioner, is simply another one of the countless instances where a taxpayer has been advised by the tax gatherers, Federal or State, that it is just too bad, but he has selected the wrong year for claiming a deduction for a bad debt. Assurance is given that " 'The government will not resort to sharp practice, nor invoke technical construction or fiction, which will manifestly thwart the good-faith intention of its taxpayers, for the purpose of visiting a tax burden upon one who in fact did not, except by construction, derive any beneficial income from the transaction.' " (*Randolph* v. *Comr. of Internal Revenue,* 76 F. 2d 472, 475.) Yet, despite such a wholesome disclaimer as that just quoted, this court is now asked to stamp with its approval the State Tax Commission's resort to the familiar device of claiming that deduction for a bad debt should have

been made for the year before, or the year after, the year for which it is claimed. The books are replete with cases where an unfortunate taxpayer, actuated by the best of good faith, has learned to his cost that he had selected the wrong year for deducting a loss which he had concededly incurred. It was because of the hardship so frequently visited upon luckless taxpayers that the Congress, in enacting the Revenue Act of 1942, by section 124 thereof, changed section 23 (k) of the Internal Revenue Code [U. S. Code, 1940 ed. Supp. II, tit. 26, § 23, subd. (k)] so as to allow deduction for a bad debt in the year when it became worthless, rather than in the year when, under the former rule, the taxpayer ascertained its worthlessness and made a chargeoff.

In 1928, Mr. Shepard invested $100,000 in par value of six per cent debenture bonds of Pierre Hotel, Inc., an issue junior to that corporation's first mortgage bonds of a total par value of $6,500,000. Following the commencement in September, 1931, of an action to foreclose the mortgage securing the bonds, the corporation in March, 1932, filed a voluntary petition in bankruptcy. A plan formulated in June, 1932, for reorganization of the corporation was not approved until February 11, 1933, by the Supreme Court of this State which, by order granted July 7, 1932, had stayed the sale under foreclosure of a chattel mortgage covering the furniture and equipment of the Hotel Pierre, Inc., a stay which remained in force until vacated by an order granted under date of January 7, 1933. Pending approval of the plan for reorganization and the lifting of the stay of a sale under the chattel mortgage, how could Mr. Shepard's loss have been definitely ascertained? "No loss upon an investment or debt is sustained until that loss is definitely established." (*People ex rel. Conway Co.* v. *Lynch,* 258 N. Y. 245, 251.)

There are three reasons why it is difficult to subscribe to the Tax Commission's imputation of a clever design on Mr. Shepard's part to throw the deduction into the year 1933 when, as it later transpired, his income exceeded that which he derived in 1932: 1. Mr. Shepard's return for 1932 was filed, as required by statute, not later than April 15, 1933, and it has not been demonstrated how, thus early in the year 1933, he had been endowed with the foresight to determine that his income for a year which had at least eight and one-half months yet to run would exceed his income for the year 1932, which was then wholly behind him; 2. Unlike the Federal surtax brackets, which mount ever higher as a taxpayer's income increases, the highest

State bracket is seven per cent on all net income beyond $9,000, so that it is inconceivable that it could have made in early 1933 any appreciable difference to Mr. Shepard whether the seven per cent which he sought to save by the deduction became available to him in 1932 or in 1933; 3. To impugn gratuitously a taxpayer's good faith in seeking to deduct a loss which he has unquestionably sustained runs counter to the wholesome rule, too infrequently observed, that the government should deal fairly with its taxpayers. (*Lewis* v. *O'Malley,* 49 F. Supp. 173, 178.) The law cloaks every man with a " presumption of good faith in his business dealings." (*A. W. Mellon* v. *Commissioner of Internal Revenue,* 36 B. T. A. 977, 1054.)

Subdivision 7 of section 360 of the Tax Law being in *pari materia* with section 23 (k) of the Internal Revenue Code as the latter read prior to its amendment by the Revenue Act of 1942, Federal decisions under the Federal statute may properly be applied to the State statute in the interest of homogeneity of interpretation. (*Matter of Weiden,* 263 N. Y. 107; *Matter of Cregan,* 275 N. Y. 337.) Hence, the fact that other taxpayers having investments in the same debentures took their losses in 1932 furnishes no yardstick for an appraisal of Mr. Shepard's course. " It is the taxpayer, not another, who is to make this determination, for it is in terms of making a taxpayer's decision that the statute speaks." (*Moore* v. *Comr. of Internal Revenue,* 101 F. 2d 704, 707.) " Presumptively the taxpayer's decision that a debt is worthless, and so charged off, measures his loss." (*Sherman & Bryan* v. *Blair,* 35 F. 2d 713, 717.) " If the taxpayer has reasonable expectation that the debt or any part of it may be paid, he is under no duty to charge it off, and the rule is that ordinarily in making this determination he is allowed a fair degree of latitude." (*Blair* v. *Comr. of Internal Revenue,* 91 F. 2d 992, 994.) "Taxpayers should be given a reasonable amount of discretion in such matters when acting in good faith." (*Herskovits* v. *Comr. of Internal Revenue,* 110 F. 2d 272, 273.) "In *Curry* v. *Commissioner,* 2 Cir., 117 F. 2d 307, 309, 310, we held, however, that the ' subjective test ' as we called it, was the right one; that is, that the proper year was that in which the taxpayer did ' ascertain ' the fact, no matter how much earlier a reasonably prudent person would have done so." (*Rosenthal* v. *Helvering,* 124 F. 2d 474, 476.) Indeed, justification for Mr. Shepard's forlorn hope of eventually realizing something from his investment of $100,000 is to be found in the fact that on December 15, 1936, he was paid by the receiver of Hotel Pierre, Inc., upon

final liquidation, $186.62 which, under article 43 of the Personal Income Tax Regulations, he was required to include, as a recovery, in his gross income for that year. "Even after a corporation has ceased to do business and is liquidating its assets, as long as it retains any assets whose value in liquidation depends upon the price that can be obtained upon a sale, there is a variable factor which precludes a determination that any definite part of the investment has been irrevocably lost." (*People ex rel. Conway Co.* v. *Lynch,* 258 N. Y. 245, 255.) "Leaving the title in the owner corporation, and keeping the corporation alive, can be taken as some proof that there was a lingering hope that values which had fallen might rise again to heights beyond the mountainous liens." (*People ex rel. Hull* v. *Graves,* 289 N. Y. 173, 177.)

Nor should Mr. Shepard or his executor be denied a deduction for the year 1933 simply because, after a vacillating course by no means without precedent, the Federal Bureau of Internal Revenue finally fixed, with Mr. Shepard's acquiescence, upon the year 1932 for the deduction, since a party to any controversy is free to buy his peace upon such terms as he is able to make.

It is suggested that, in view of the rulings in *People ex rel. Hull* v. *Graves* (*supra*) and in *People ex rel. Maloney* v. *Graves* (289 N. Y. 178), this court is powerless to relieve petitioner from the consequences of the determination made by the State Tax Commission which, in this instance, has played the all too familiar triple role of complainant, prosecutor and judge. But in each of the two cases last cited this court (263 App. Div. 223; 263 App. Div. 1044) had annulled the Tax Commission's determination "on the law and facts;" whereas the Commission's determination herein should be annulled because, as a matter of law, it was "clearly erroneous" in that the Commission was controlled by the course taken by bondholders other than Mr. Shepard, while under the statute Mr. Shepard's decision is the proper criterion. (*Moore* v. *Comr. of Internal Revenue, supra.*)

Petitioner complains of an absence of findings of fact in the Commission's determination which, however, contains enough to demonstrate that it was " clearly erroneous," since it turned upon the Commission's view as to when the bonds became actually worthless, irrespective of the time when Mr. Shepard ascertained their worthlessness. Accordingly, the determination should be annulled, with fifty dollars costs and disbursements to petitioner.