In the Matter of PARK TEN ASSOCIATES, Petitioner, v CITY OF NEW YORK DEPARTMENT OF FINANCE et al., Respondents.

First Department, April 12, 1988

### APPEARANCES OF COUNSEL

*Steven S. Miller* of counsel *(Michael P. Richman* with him on the brief; *Rosenman & Colin,* attorneys), for petitioner.

*Amy F. Nogid* of counsel *(Glenn Newman* and *Gale Zareko* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

MILONAS, J.

Petitioner Park Ten Associates appeals from a final determination of respondent Commissioner of Finance, Department of Finance of the City of New York, assessing a tax deficiency against petitioner under the New York City Real Property Transfer Tax Law in the principal amount of $164,544 plus interest and penalty of $127,955.45 for a total of $292,499.45. The proceeding was transferred to this court pursuant to an order of the Supreme Court, New York County (Harold Baer, J.), entered on March 23, 1987.

This matter arises out of the transfer on May 1, 1981 of title to real property located at 10 West 66th Street in Manhattan from petitioner, the sponsor of a cooperative conversion plan, to the cooperative corporation. Thereafter, petitioner instituted the instant proceeding pursuant to CPLR article 78 challenging respondent's disallowance of petitioner's deduction of certain mortgages which it took in connection with its payment of the real estate transfer tax. Involved here is a complex financing arrangement commencing on August 8, 1979, when petitioner executed a mortgage and simultaneous

mortgage note in favor of Chemical Bank in order to borrow $16,500,000 for the purchase of the subject apartment building which was to be subsequently converted to cooperative ownership. Then, in accordance with an agreement entered into on January 22, 1980 between petitioner and Chemical Bank, the mortgage and note were severed into two parts, one for $8,500,000 and the other for $8,000,000. The same day, Chemical Bank sold the $8,000,000 mortgage, which was given priority over the remaining mortgage, to Connecticut General Life Insurance Company (CGLIC).

On May 19, 1980, a contract of sale was executed which contemplated the sale of the property by petitioner, as grantor, to the cooperative corporation, as grantee, with grantee to assume the severed mortgage held by CGLIC, whose outstanding balance on the closing date, it was estimated, would be $7,981,389.49. However, the parties later determined that the financing for the cooperative corporation should be increased by another $2,000,000, resulting in an outstanding principal balance of $9,954,474.91 on the closing date. The following year, on May 1, 1981, which was the closing date, but prior to the delivery of the deed, petitioner and Chemical Bank entered into another contract splitting the remaining mortgage into two portions of $2,000,000 and $6,500,000, respectively. The $2,000,000 mortgage was then sold by Chemical Bank and assigned to CGLIC. Petitioner and CGLIC agreed to consolidate the $2,000,000 with the mortgage already being held by the latter, with the new mortgage amount now totaling nearly $10,000,000. Chemical Bank and CGLIC thereupon entered into a subordination of mortgage agreement, which subordinated the remaining $6,500,000 held by Chemical Bank to the consolidated mortgage. Next, the grantee paid Chemical Bank $6,500,000 on the reduced mortgage and received an assignment of that mortgage containing a provision precluding merger of the mortgage with the fee interest. In fact, the fee owner and the mortgagor now become the same, and it does not appear that the grantee ever made any mortgage payments to itself as holder of the mortgage.

Immediately after the conveyance of the deed on May 1, 1981 to the cooperative corporation, the latter assumed all of the mortgagee's obligations under the consolidated mortgage held by CGLIC. On May 5, 1981, petitioner filed a real property transfer tax return reporting the transfer of the property in question and calculating the tax as follows:

| | |
|---|---|
| Consideration | $24,865,593.15 |
| Deduction: Preexisting and Surviving Liens | (16,454,474.92) |
| Net Consideration: | $ 8,411,118.23 |
| Tax Rate: | 1% |
| | $ 84,111.18 |

On April 10, 1984, the Department of Finance of the City of New York issued a notice disallowing the deduction and assessing a deficiency plus interest and penalty. Petitioner disputed the agency's ruling, and a statutory hearing ensued. Following the hearing, the Hearing Officer decided that the liens sought to be deducted by petitioner had been placed on the property in connection with the sale of the building to the grantee and that, in addition, the $6,500,000 mortgage assigned to the grantee was not a lien surviving the transfer. The findings of fact and conclusions of law of the Hearing Officer, thus, upheld the original administrative determination, and petitioner brought the present article 78 proceeding.

The real property transfer tax imposed by the City of New York, which applies to "each deed at the time of delivery by a grantor to a grantee when the consideration for the real property and any improvement thereon * * * exceeds twenty-five thousand dollars" (Administrative Code of City of New York § II46-2.0), is governed by title II of chapter 46 of the New York City Administrative Code. Subdivision (4) of section II46-1.0 defines "consideration" as the "price actually paid or required to be paid for the real property or interest therein, without deduction for mortgages, lien or encumbrances, whether or not expressed in the deed and whether paid or required to be paid by money, property, or any things of value. It shall include the cancellation or discharge of an indebtedness or obligation. It shall also include the amount of any mortgage, lien or other encumbrance, whether or not the underlying indebtedness is assumed." Subdivision (5) of the same provision states that "net consideration" means "[a]ny consideration, exclusive of any mortgage or other lien or encumbrance on the real property or interest therein which existed before the delivery of the deed and remains thereon after the delivery of the deed."

Section II46-12.0 authorizes the Director of Finance to make, adopt and amend rules and regulations deemed appropriate to the implementation of the statute and its purposes. Accordingly, article 5 of the Department of Finance's regula-

tions relating to the real property transfer tax, which was subsequently amended to conform to changes enacted with respect to the real property transfer tax, at the time relevant herein described "net consideration" as:

"Any consideration, exclusive of any mortgage, or other lien or encumbrance on the real property or interest therein which existed before the delivery of the deed and remains thereon after the delivery of the deed.

"In determining the amount of net consideration, only the amounts of liens and encumbrances on the property existing before the sale and not removed thereby may be deducted. Thus, for example, taxes or assessments which are liens on the property before the sale and are not paid at the time of sale are deductible. No deduction shall be made on account of any lien or encumbrance placed on the property in connection with the sale, or by reason of deferred payments of the purchase price whether represented by notes or otherwise. As used herein, the term 'sale' refers to the delivery of the deed."

Petitioner contends that article 5 of the Department of Finance's regulations is void for vagueness and is, moreover, inconsistent with the Real Property Transfer Tax Law. Respondent, on the other hand, urges with some merit that the soundness of the city's position is supported by the fact that administrators of similar tax laws on both the State and Federal levels placed the same interpretation upon almost identical provisions as did city authorities. For instance, at the time of the transaction in question, section 1401 (d) of the New York State Tax Law defined "consideration" as "the price actually paid * * * for the real property or interest therein * * * It shall not include the amount of any lien or encumbrance on the real property or interest therein which existed before the delivery of the deed and which remains thereon after the delivery of the deed" (the statute was amended pursuant to L 1983, ch 15, § 55, to eliminate the deduction for liens or encumbrances). The State's applicable regulation (20 NYCRR 575.3), like its city counterpart, provided that "[i]n determining the amount of the net consideration for, or the net value of, the real property conveyed, only the amount of the liens and encumbrances on the property existing before the sale and not removed thereby may be deducted * * * [n]o deduction shall be made on account of any lien or encumbrance placed upon the property in connection with the sale" *(see also,* Internal Revenue Code [26 USC]

§ 4361, and accompanying Federal regulation, 2 Fed Tax Regs [26 CFR] part 43, § 43.4361-1 [1970], since repealed).

■ Certainly, the law is well settled that "the construction given a statute by the agency responsible for its administration will be upheld if not irrational or irresponsible" *(Matter of John P. v Whalen,* 54 NY2d 89, 95; *see also, Matter of Howard v Wyman,* 28 NY2d 434, 438). In that regard, it was neither irrational nor irresponsible for the Director of Finance to determine that the statutory definition of "net consideration" (that is, consideration "exclusive of any mortgage, or other lien * * * which existed before delivery of the deed and remains thereon after the delivery of the deed") mandates the disallowance of a deduction for any lien or encumbrance placed on the property in connection with the sale thereof. Thus, while a continuing mortgage or other encumbrance would be deductible, an encumbrance placed on the property contemporaneously with the sale would not be excludable. Similarly, the regulation at issue is not void for vagueness, since it is clear that it applies to all situations wherein the mortgage has been obtained close to the date of the sale of the property *(see, Kips Bay Towers Assocs. v Michael,* 114 AD2d 1052; *Greentree Knolls v Department of Fin.,* 114 AD2d 745; *Matter of Ciampa v City of New York,* 111 AD2d 597; *Matter of Dorcar Realty Corp. v New York City Dept. of Fin.,* 104 AD2d 1059; *Matter of Defreal Holding Corp. v City of New York,* 97 AD2d 985, confirmed-without-opinion cases in which the city's application of article 5 of the regulations was upheld).

■ However, although petitioner's attack on the validity of article 5 must be rejected, there is a lack of substantial evidence that an indebtedness procured in August of 1979 was an encumbrance placed on the property in connection with a sale which occurred nearly two years later. The fact that petitioner, when it purchased the building, intended eventually to convert the premises to cooperative ownership does not, by itself, support a finding that the mortgage was actually obtained in connection with the sale. Indeed, respondent's construction would apply equally to any situation in which a mortgage was placed on property, no matter how many years preceding the actual transfer of title, wherein a future cooperative conversion was envisioned by the purchaser. This is clearly not what the phrase "in connection with the sale" means. At the very least, for a mortgage to be considered to have been put on the property in connection with the sale, the

placement of the encumbrance must be imminent in time to that sale. Consequently, respondent's disallowance of the entire $16,454,474.92 deduction was improper. The only portion of the deduction which was appropriately excluded from net consideration was the $6,500,000 reduced mortgage held by Chemical Bank which was assigned to the grantee on the closing date. Notwithstanding the language in the conveyance instrument, the mortgage did, in fact, merge with the fee interest, and respondent was warranted in regarding the nonmerger provision as nothing more than an attempt to avoid taxation *(see, Drinkhouse v Michael,* 108 AD2d 1103, decided without opinion, in which this court declined to give effect to a nonmerger provision and upheld the disallowance of the tax deduction). Since there was no continuing mortgage liability with respect to the $6,500,000, respondent did not need to recognize the nonmerger clause for tax purposes.

Therefore, in this proceeding pursuant to CPLR article 78, transferred to this court by an order of the Supreme Court, New York County (Harold Baer, J.), entered on March 23, 1987, which seeks to annul and vacate a final determination of respondent Commissioner of Finance, dated September 19, 1986, assessing petitioner for a real property transfer tax deficiency in the principal amount of $164,544 plus interest and penalty of $127,955.45 for a total of $292,499.45, the petition should be granted on the law to the extent of annulling the determination as to the consolidated mortgage of $9,954,474.91, the administrative determination otherwise confirmed, and judgment should be entered in favor of petitioner assessing the appropriate amount of tax, interest and penalty, without costs or disbursements.

Asch, J. (dissenting in part). I disagree with the majority which finds "there is a lack of substantial evidence that an indebtedness procured in August of 1979 was an encumbrance placed on the property in connection with a sale which occurred nearly two years later". Article 5 of the regulations of the Department of Finance disallows *any* deduction made on account of any lien or encumbrance placed on the property "in connection with the sale". Actually, the documents and realities of contemporary real estate practice provide unequivocal support for the Department's ruling that the mortgage was placed on the property in connection with the sale.

The loan agreement of August 8, 1979 was specifically incorporated by reference into the mortgage. It reads that the

petitioner has advised Chemical of its intention to purchase the premises for $16,500,000 and convert it into a cooperative. The agreement further states that the petitioner (Borrower) has applied to Chemical for a mortgage loan "to partially finance Borrower's acquisition of the Premises, the Conversion and the costs to be incurred by Borrower in connection with its marketing program with respect to the sale of stock and proprietary leases". A cooperative corporation was to be organized. Subscription agreements and proprietary leases would be entered into by the cooperative and the purchasers of shares in the cooperative corporation. The plan of conversion was to be submitted to the Attorney-General within a nine-month period. This paperwork, as well as the nature of the transaction, make it clear that the $16,500,000 mortgage was placed on the real estate in connection with the sale by the petitioner to the cooperative corporation.

The period of intervening time between the procurement of the mortgage loan and the sale does not vitiate the connection between the two. The decades it took to complete the Great Pyramid at Giza did not break the nexus from the time the stone blocks were first placed, to completion. It is the plan that is significant, not the mere passage of time. Here, the loan agreement itself noted that a conversion plan was to be submitted to the Attorney-General within nine months after the loan. Subsequently, 10 amendments to the offering plan for the cooperative conversion were filed. All required the approval of the Attorney-General and depended on the expedition with which his office worked. Therefore, the fact that the actual sale to the cooperative corporation took place 21 months after the loan agreement is quite understandable. As a matter of fact, this time period certainly conforms to industry experience and was contemplated by the bank and petitioner herein.

Even if the evidence before the Finance Department were not overwhelming, its ruling must be upheld. Judicial review of a ruling made by a taxing authority is limited in scope *(People ex rel. Hull v Graves,* 289 NY 173). The Court of Appeals has stated the standard for appellate review: "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or

unreasonable, it will be upheld" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459).

Where specific application of a broad statutory term is initially determined by the taxing agency pursuant to a delegation of authority from the Legislature, the reviewing court's function is limited and the determination should not be disturbed unless clearly erroneous *(see, Matter of Young v Bragalini,* 3 NY2d 602, 605).

The burden of overcoming the correctness of tax assessments or exemption from taxation rests squarely on the taxpayer, and if there are any facts or reasonable inferences from the facts supporting the agency's ruling, the court should sustain that ruling *(Matter of Liberman v Gallman,* 41 NY2d 774, 777).

Certainly, the determination by the Hearing Officer that the liens were placed on the property in connection with the sale to the cooperative corporation, and were therefore not deductible, was rational, not capricious, and, in fact, based on substantial evidence in the record.

Accordingly, I would confirm in toto the determination of the respondent Commissioner of Finance, dated September 19, 1986, and dismiss the petition.

SANDLER, J. P., and ROSENBERGER, J., concur with MILONAS, J.; ASCH, J., dissents in part in an opinion.

Determination of respondent Commissioner of Finance dated September 19, 1986, annulled as to the consolidated mortgage of $9,954,474.91, and otherwise confirmed, without costs and without disbursements.