THE PEOPLE OF THE STATE OF NEW YCRK ex rel. FREEBORN & Co., INC., Relator, *v.* MARK GRAVES and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, July 11, 1939.

*Shiland, Hedges & Pelham* [*Arleigh Pelham* of counsel], for the relator.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown, Assistant Attorney-General,* of counsel], for the respondents.

SCHENCK, J. This is a certiorari proceeding to review a determination of the State Tax Commission fixing a franchise tax under

article 9-A of the Tax Law for the tax year beginning November 1, 1928. The proceeding was instituted prior to the enactment of article 78 of the Civil Practice Act.

The tax was assessed December 12, 1928, at $801.23. At the time of the assessment the State Tax Commission advised the relator that comparison had been made with others engaged in the same or similar business, and that an application of general business rules concerning compensation of officers, indicated the necessity of considering a portion of overhead in the sum of $11,778 as not a reasonable or necessary expense of the business.

This assessment was not agreeable to the relator and on September 9, 1931, a hearing was held by Commissioner Merrill. On January 18, 1932, a determination was made by the Commission affirming the tax at $801.23.

On a writ of certiorari, the Appellate Division, reviewing the record, came to the conclusion that the Tax Commission, in reducing the amount of officers' salaries reasonably allowable, had erroneously assumed that the 1926 salaries of the officers were $33,300, and in 1927, $45,078.74, and that the Tax Commission had erroneously assumed that that increase of $11,778.74 in officers' salaries was not justified. As a matter of fact, the 1926 salaries were $47,254.70 instead of $33,300, so that there was not an increase of $11,778.74 in the course of one year. The Appellate Division, therefore, annulled the determination of the Tax Commission, because it believed the Commission had made these erroneous assumptions, and sent the matter back and required the Commission to make a proper determination upon the evidence. (245 App. Div. 533.)

When the matter came back to the Tax Commission it made a new determination and fixed the tax at $1,000.08.

The Tax Commission explained in its decision fixing the tax at $1,000.08 that the determination of January 18, 1932, was made upon a consideration of the nature, volume and result of the business of the taxpayer in comparison with the reports of other corporations engaged in the same line, and that before making its determination of January 18, 1932, it had learned at the hearing of September 9, 1931, that the true figure of the officers' salaries in 1926 was not $33,300, but was $47,254.70, and that they had the true figure in mind when they made their determination.

The Tax Commission further explained that when it made its determination on January 18, 1932, after the hearing, it had considered making a further deduction from officers' salaries in addition to the deduction which they had made on the original assessment December 12, 1928, but that they hesitated to make a further deduction because they had already made one such deduction, and

for that reason they decided to affirm the original determination. The Tax Commission also explained that since the matter had been sent back to them for further determination, and that on the original proceeding they had intended to allow a rate of $38.86\frac{2}{3}\%$ of the gross receipts as a reasonable allowance for officers' salaries, they would use the same figure upon the correct amounts involved, and by this means they arrived at a tax of $1,000.08.

The principal question is whether or not the Tax Commission made its determination upon competent proof. The relator claims that the Tax Commission had no right to consider the reports of other corporations in arriving at a determination unless these reports were actually offered in evidence.

In making the original determination as to the amount of the tax in this matter. the Tax Commission, like most assessing officers, was permitted to arrive at its decision by consideration of such facts and the exercise of such judgment as it felt were proper. The members might consider their own experience, if they had any in the particular line of business in question, such experience of others as came to their attention, and any other information which they thought to be pertinent. The assessment as a result was presumptively correct. The same rule likewise must apply on a reassessment. (*People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346, 348.)

On certiorari, however, the return must disclose all the evidence. If it is defective in this respect, a further return should be compelled, in default of which the review must be on the return submitted. (Tax Law, §§ 219, 199; *People ex rel. N. Y. C. R. R. Co.* v. *Block*, 178 App. Div. 251; *People ex rel. Gage* v. *Lohnas*, 54 Hun, 604.)

The relator had the burden of showing that the reasonable value of the services of the officers was more than that allowed by the Commission. It is impossible to determine from any of the evidence submitted by the realtor that the correct figure is the one claimed by the relator rather than the figure set by the Tax Commission.

There was evidence that Mr. Freeborn, the president of the relator, had been in a similar business, and that he had received compensation while he was with L. A. Wight & Co., from 1911 to 1916, of from $15,000 to $25,000. He further testified that he had received as high as $65,000 to $70,000 in the insurance business in 1921. Mr. Freeborn also testified that it had appeared in court that the president of Johnston & Higgins, which carried on a similar business to that of the relator, had received a salary of $100,000 per year, and that five or six of the directors received over $50,000.

It appeared that for the year ending December 31, 1927, the relator had a gross income on insurance commissions and interest of $85,891.56; that the president received salary and extra compensation amounting to $25,884.40; that out of this, he paid his sister $2,400 or ten per cent of his salary, she being a minority stockholder. The vice-president received $13,194.34; the treasurer, $6,000, and secretary, a percentage, $4,012.33, which was inadvertently omitted from the schedule. Other expenses amounted to $30,945.53, including wages and salaries, $21,117.34. The total compensation for personal services of officers of the company was $45,078.74. Upon this meager evidence, it is impossible to say that the determination of the Commission was either arbitrary or unfair.

The Tax Commission is a fact finding body and, unless its action was arbitrary, capricious or unlawful, its determination should not be disturbed. (*Niagara Falls Power Co.* v. *Water Power & Control Commission*, 267 N. Y. 265.) Relator, if not satisfied with the return, should have compelled any omissions to be supplied, in default of which, the case must be decided on the return filed. The determination of the Commission has not been shown to be arbitrary or unfair, and should be confirmed.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.