Burke, J.
Petitioners, members of a New York partnership, engaged in the insurance business, contend that they are “ carrying on ” business “ both within and without the state ” so as to entitle them to an allocation of the net income in computing the unincorporated business tax pursuant to section 386-g of the Tax Law.
The Tax Commission disallowed the claim for exemption and imposed assessments for unincorporated business tax on all the income received from Adams & Porter, a Texas partnership, and Adams & Porter & Companhia Limitada, a Brazilian organization, on the ground the New York firm was not carrying on business in Texas or Brazil and that all the income was earned within New York and properly subject to the unincorporated business tax without apportionment. The Appellate Division found upon this record that “it is not unreasonable” to say that the New York partnership was not carrying on business without the State.
Petitioners concede that the enactment in 1931 of the Texas statute forced the partners to dissolve the partnership so far as it affected the insurance business transacted in Texas. They also admit that Adams had become a resident of Brazil in order to comply with Brazilian law; that Aprill, a Brazilian resident, contributed 24% of the original of the Brazilian company capital; that an attorney, Abreu, a Brazilian citizen, contributed 1%; and that Adams & Porter of New York contributed the remaining 75% of the capital in compliance with the statutes of Brazil. Texas has a complete system of licensing and registration (Texas Insurance Code, ch. 21). Brazil permits nonresidents to place insurance through Brazilian companies or Brazilian agents subject to a nonresident income tax. Prior to 1947 the New York firm transacted its business through Brazilian interests, but in that year it formed Adams & Porter & Companhia Limitada. Thus during the tax years involved in *605 all three proceedings, the three firms, Adams & Porter of Houston, Adams & Porter & Companhia Limitada, and Adams & Porter of New York were separately licensed entities.
Since Adams & Porter of New York was not licensed by either Texas or Brazil to engage in business there, and had ceased carrying on its activities as a nonresident in Brazil, although authorized to do so, the Tax Commission decided that its business, if any, could have been conducted only in the State of New York.
It has been long recognized that the burden of proof to overcome assessments rests upon the taxpayer (Matter of Calder v. Graves, 261 App. Div. 90, 94, 95, motion for leave to appeal denied 261 App. Div. 1025, affd. 286 N. Y. 643); and that if there are facts or reasonable inferences to be drawn from the record to support the determinations of the commission, the assessments must be confirmed (People ex rel. Freeborn S Co. v. Graves, 257 App. Div. 587). Ordinarily, therefore, determinations of the Tax Commission are not disturbed unless clearly shown to be erroneous (People ex rel. Hull v. Graves, 289 N. Y. 173,177).
Where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the court’s function is limited (Board v. Hearst Publications, 322 U. S. 111, 131). In such matters we may not substitute our judgment in place of the judgment of the administrative agency where reasonable minds may differ as to the probative force of the evidence (Matter of Kopec v. Buffalo Brake Beam-Acme Steel & Malleable Iron Works, 304 N. Y. 65, 71; Matter of Kilgus v. Board of Estimate, 308 N. Y. 620, 627). This is so even in face of the general rule that a tax statute is to be construed in favor of a taxpayer (People ex rel. Mutual Trust Co. v. Miller, 177 N. Y. 51, 57; Matter of Voorhees v. Bates, 308 N. Y. 184, 188), for that rule does not supplant nor does it disregard classic standards. It is clear beyond dispute that, when we are dealing with a claim for exemption from taxation, “it must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption ” (People ex rel. Savings Bank of New London v. Coleman, 135 N. Y. 231, 234). £ £ £ The policy of the law is to construe statutes exempting property from taxation somewhat rigidly, and not to permit such *606 exemption to be established by doubtful implication ’ ’ ’ (People ex rel. Mizpah Lodge v. Burke, 228 N. Y. 245, 247-248). In this instance, the Legislature has specifically relegated the determination of these questions to the Tax Commission.
Guided by these principles, it seems to us that when the activities of petitioners, considered in the light of the laws of Texas and Brazil and petitioners’ agreements with the out-of-State firms are weighed against this record, and the various standards given us by decisions of the courts, we cannot overrule the Appellate Division’s determination that the denial of the exemption by the Tax Commission was reasonable.
There is ample support for this conclusion even if we consider, for purposes of comparison only, the liberal constructions applied in the cases establishing a company’s “presence” in a State for jurisdictional purposes. We have said that the determination of whether a company is doing business in a particular jurisdiction depends upon the facts of the particular case (Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, 210), and that there is no precise formula which we may use to determine the extent of activities which will constitute the doing of business in a State. (Tauza v. Susquehanna Coal Co. 220 N. Y. 259, 268.) But it is “requisite * * * that enough be done to enable us to say that the corporation is ” there. (Tauza v. Susquehanna Coal Co., supra, p. 268.) Of course, the fact that the company is represented in its local activities by a separate individual, corporation or partnership, rather than by a directly controlled subsidiary or branch office, is not in itself determinative. (Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., supra, p. 211.) The circumstance that the company has not sought an authorization to do business in a State will not render the service of process ineffective (Berner v. United Airlines, 3 N Y 2d 1003). Nevertheless, if a company has been informed that it is disqualified from carrying on its business in a State, it can hardly claim to exercise the privilege of doing its business through an agent.
The evidence adduced by petitioners does not conclusively establish that they were “ present ” and carrying on their business in the out-of-State locations. These petitioners sold no insurance in Texas or Brazil and issued no bills therefor. Neither the Texas firm nor the Brazilian company regularly sold insurance for the account of the New York firm or col *607 lected premiums in its behalf (see Green v. Chicago, Burlington & Quincy Ry., 205 U. S. 530, 533). There was no continuous flow of insurance policies placed by the New York firm into Texas and Brazil as there was a flow of products in the case of International Harvester v. Kentucky (234 U. S. 579, 586-587). The Texas and Brazilian companies delivered the insurance policies, billed the insured and collected the payments in their own names and for their own accounts (see Lillibridge, Inc., v. Johnson Bronze Co., 220 App. Div. 573, 574, affd. 247 N. Y. 548). Since the unlicensed New York firm had no power to make a contract of any kind, or receipt for or receive the premiums due on the insurance policies issued in Texas and Brazil, and as it could not delegate a power it did not have, the claim of carrying on business in Texas and Brazil is subject to serious challenge. The weakness of petitioners’ proof is pointed up by the irrelevancy of the tax cases petitioners rely on. In People ex rel. Badische Fabrik v. Roberts (152 N. Y. 59, 65, 66), Fabrik had become a special partner in the New York firm which acted as agent for its products in this country. In Matter of Chapman v. Browne (268 App. Div. 806, motion for leave to appeal denied 293 N. Y. 933) the nonresident was a limited partner of the New York firm. But Adams & Porter of New York was not a partner in the Texas and Brazil firms. In fact, its right to carry on its business in Texas had been withdrawn, and it voluntarily chose to discontinue carrying on its business through an agent in Brazil even though it could not open a branch office there. It elected to have Mr. Adams become a permanent resident of Brazil in order to legally organize a separate entity, Adams & Porter & Companhia Limitada. In Ramsey v. Investors Diversified Services (248 S. W. 2d 263, 264 [Tex. Civ. App.]), the taxpayer was authorized to carry on business in Texas under a specific permit issued in 1941. Acting pursuant to this permit, Investors placed mortgages on Texas real property and recorded the mortgages in Texas. The present case is different in every essential particular.
We find no authority under the tax cases for the proposition that a company which was denied the privilege of carrying on a licensed business in a State did, in fact, carry on its business in the forbidden territory sans privilege through an agent. The acknowledged compliance by the petitioners with the provisions of the laws prohibiting the doing of insurance business by other *608 than Texas and Brazilian firms is a sufficient basis for the determination of the Tax Commission that petitioners’ alleged proof of carrying on its business outside the State did not warrant the granting of the exemption from taxation.
Since the petitioners were not licensed to transact insurance business in those jurisdictions, the local insurance concerns necessarily were transacting their own business. Indeed the dissolution agreement of 1932 and the agreement of 1949 indicate that the moneys paid to the New York firm by the Texas firm were considerations for the sale and assignment of the Houston business to the Texas partner and for the admission of the Texas partners to membership in the New York firm. This evidence does not establish an unequivocal lawful agency relationship or a relationship of joint venturers. The testimony and documentary proof may be interpreted as showing that petitioners were only deriving income from the other firms by way of contract and investment.
The denial of tax exemption after a hearing by an administrative agency should not be brushed aside on the assumption that the agreements do not mean what they plainly say, but are in reality devices designed to overcome an interdicted relationship between the New York firm and the Texas and Brazilian insureds, and that the employment of such private agreements revokes the denial of the privilege of doing business there entitling the petitioners to an exemption from taxation here.
Belief from discriminatory legislative acts of foreign jurisdictions which create inequities under our tax laws and regulations, should be sought from the Legislature -not by way of judicial decree. If the enforcement of the tax laws and regulations under such circumstances warrant reconsideration, the necessary corrective remedies can be supplied only by the Legislature.
With the evidence that petitioners were debarred from doing insurance business in Texas and Brazil and with the standards formulated in prior decisions before us, we find that there was a rational basis for the conclusions of the Tax Commission that the petitioners were not carrying on business in Texas and Brazil within the meaning of the provisions of the statute.
Since it is agreed that the questions arising under different sections of the Tax Law (§§ 351, 351-a) involving personal income tax proceedings, entitled Proceeding No. 2 and Proceed *609 ing No. 3, are governed by the same principles, the order of the Appellate Division insofar as it confirms the determinations in those proceedings should be affirmed.
Accordingly the order of the Appellate Division should be affirmed.