In the Matter of ALLY & GARGANO, INC., Petitioner, v ABRAHAM BIDERMAN, as Commissioner of Finance of the City of New York, et al., Respondents.

First Department, March 31, 1987

APPEARANCES OF COUNSEL

*Stephen J. Fallis* of counsel *(Carb, Luria, Glassner, Cook & Kufeld,* attorneys), for petitioner.

*James F. Eller* of counsel *(Glenn Newman* and *Stanley*

*Buchsbaum* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

KASSAL, J.

Petitioner, Ally & Gargano, Inc., is an advertising agency which, on September 12, 1979, entered into a lease with 805 Third Avenue Co., as landlord, to rent three floors in a building to be constructed at 805 Third Avenue, New York, New York. The lease provided for an annual minimum rent of $1,231,490. The original construction plan called for a 36-story building, which included "bonus" floors, subject to approval by the City Planning Commission and the Board of Estimate. After approval had been denied for certain bonus floors, the lease was renegotiated and amended on May 22, 1980, to substitute different floors and to increase the annual rental to $1,370,236.20. Thereafter, a second lease amendment was entered into on February 1, 1982, again changing the floors subject to the lease.

As part of the original lease agreement, the landlord furnished the tenant with a "work letter", under which it agreed to perform certain standard building work and installations at no cost to the tenant, reserving to the lessee the right to install additional or nonstandard installations (tenant work) at its own cost and expense. Such tenant work could be done, at the tenant's option, by its contractors or by workmen hired by the landlord. It is undisputed that at the time the work letter was furnished, plans and specifications had been drawn, which called for expenditures by the landlord and the tenant of approximately $1 million each. Under the lease, rent payments were not to commence until the landlord had substantially completed the construction work under the work letter. Since this would require the tenant's contractors to be working simultaneously in the same area with the contractors retained by the landlord, tenant suggested that, to facilitate coordination and completion of the work, the work should all be done by one set of contractors. Accordingly, it was agreed that the landlord would take over the responsibility of performing the tenant work, at the tenant's expense, in addition to its own standard building installations. Thus, the second amendment to the lease included the following provision: "In consideration of Landlord agreeing to perform the Work shown on the Approved Plans, including Work which hereto-

fore would have constituted special work, Tenant agrees to pay Landlord the sum of One Million ($1,000,000.00) Dollars ('Tenant's Contribution') which shall be payable periodically (but not more than once monthly) within ten (10) days after receipt of a certificate from Landlord's architect or engineer acknowledging the percentage of Work completed in the Demised Premises. In no event shall the payments of Tenant's Contribution exceed $250,000 per month cumulatively. The first Certificate for payment of Tenant's Contribution shall not be sent prior to March 1, 1982. The failure of Tenant to pay any part of the Tenant's Contribution when due shall be tantamount to a default in the payment of minimum rent in which event Landlord may accelerate the balance of Tenant's Contribution and in addition thereto shall have all of the rights available to it as a result of a default in the payment of minimum rent under the Lease."

It is conceded that the tenant's requested improvements were extensive and included duct work for heating, ventilating and air conditioning, plumbing for bathrooms and drinking fountains, electric circuitry and wiring, sheetrock partitions, sprinkler mains and branch piping, thermostat wiring, reinforced concrete beams for internal stairs and acoustical ceiling tile. For this additional tenant work, $925,000 was paid to the landlord on an installment basis and there was a dispute as to the balance of $75,000, which was settled for $50,000, making a total payment of $975,000 for such work. Most of these payments were made before commencement of the lease and only a minor portion of the work was completed after the lease took effect. None of the payments were billed as "rent".

On December 13, 1984, the Department of Finance issued a notice of determination, assessing petitioner for a deficiency in commercial rent or occupancy tax, based in part upon the inclusion of these tenant leasehold improvements as taxable rent. After a hearing, a decision was rendered on May 15, 1986, determining that petitioner had paid the landlord $975,000 for these requested improvements to the premises, not the $1,000,000 set forth in the lease, and concluding that it was rent as part of the bargained for consideration for the use and occupancy of the premises. In doing so, respondent noted that the failure to pay for tenant work would afford the landlord all of the rights available under section 16.04 of the lease in the event of a default in minimum rent, including summary proceedings and the right of reentry thereunder. Therefore, it

held such leasehold improvement payments were to be included in the base taxable rent.

Following issuance of the administrative determination, this CPLR article 78 proceeding was commenced.* Petitioner claims that the determination was not supported by substantial evidence in that the payments for such additional tenant work did not constitute rent but were payments to the landlord acting in the capacity of its general contractor in performing these leasehold improvements.

Administrative Code of the City of New York § L46-1.0 (6) defines "rent" as the consideration paid or to be paid for the use or occupancy of premises: " 'Rent.' The consideration paid or required to be paid by a tenant for the use or occupancy of premises, valued in money, whether received in money or otherwise, including all credits and property or services of any kind and including any payment required to be made by him on behalf of his landlord for real estate taxes, water rents or charges, sewer rents or any other expenses (including insurance) normally payable by a landlord who owns the realty *other than expenses for the improvement,* repair or maintenance *of the tenant's premises."* (Emphasis added.)

While the Administrative Code definition of rent is broad, encompassing any consideration paid or required to be paid, we are persuaded that the $975,000 payments to the landlord here were not for the use and occupancy of the premises. The tenant's retention of the landlord as its contractor to perform such additional work and the work itself were entirely at the tenant's option and the monthly installments therefor were separately billed and not included in normal lump-sum rent payments.

It is conceded that, if the tenant had employed an outside contractor, not the landlord, the payments would clearly not be rent. Nevertheless, respondents rely in large part upon the fact that these were capital improvements which they claim would be beneficial to the landlord by increasing the value of the space in the future. This, however, is not borne out by the record. As argued, the value of the improvements to the landlord in the future would necessarily be dependent upon

---

* Petitioner's only challenge in this proceeding is to the determination of deficiency for commercial occupancy tax for the tax years 1981-1983 in the principal sum of $77,784.94 plus interest of $24,258.53, a total of $102,043.47, for such tenant work. There is no challenge to so much of the assessment as related to $28,556 in additional liability insurance premiums to afford insurance coverage for the landlord as an additional insured.

its obtaining a tenant desirous of securing space with the identical office configuration and offices, duct work, partitions, electrical wiring, outlets and staircase as that installed by petitioner. Thus, the fact that these were capital outlays in the first instance is not dispositive nor does it appear from the written agreements between the parties that these were installations which would normally be provided and paid for by the landlord. Instead, they were extra installations, to adapt the premises to the special needs of this tenant. This is clearly illustrated by the installation of an interior staircase connecting the floors, a raised or platform floor, a kitchen and kitchen appliances and the architectural metal and glass for mirrors, glass and sliding doors.

*Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y.* (58 NY2d 95) relied upon by respondents, is distinguishable in several respects. In that case, the court upheld the imposition of New York City commercial rent or occupancy tax upon sums paid by the tenant to the landlord for cleaning and janitorial services. The lease provided that the landlord would supply such services, but granted the tenant the option to provide its own cleaning service at its own expense, with a pro rata abatement of the rent. Although not dispositive, the court observed that monthly rent had been billed and paid in one lump sum and did not separately apportion the amount attributable to such cleaning services. This, however, is not at all akin to the situation in our case, where the cost of tenant work was not includable in regular monthly rent payments but was separately identified, billed and paid for as work progressed. Unlike *Mobil Oil,* the payments here were not for an ongoing service but related to one-time work basically completed before the tenant took possession and the lease commenced.

In *Matter of Mobil Oil (supra),* the court rejected the tenant's reliance upon the exclusion in Administrative Code § L46-1.0 (6), of "expenses for the improvement, repair or maintenance of the tenant's premises", holding that the term "maintenance" in the Code referred only to "work done to prevent and cure depreciation, i.e., such things as painting, replacing window sashes, etc., not work done to maintain the cleanliness of the premises" *(supra,* at 100). Clearly, the ongoing cleaning service in *Mobil Oil,* which a landlord usually provides in office buildings, is quite distinct from the single charge for major installation work at issue here.

Petitioner claims that the parties neither intended nor

agreed that the installment payments for such tenant work were to be considered or treated as annual rent for the premises. This is evidenced by the fact that the payments for tenant work were billed separately from rent and were not in a fixed amount payable in regular installments or over the term of the entire leasehold period. Rather, the sums to be paid depended upon the percentage of the work completed and the payments were specifically identified in the lease and earmarked as payment for such tenant work. It bears repeating that the work was essentially completed before the lease commenced.

Our courts generally defer to governmental agencies charged with primary responsibility for administering a statute, and will uphold an administrative determination which is not irrational or unreasonable (see, Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 471). Nevertheless, considering all the factors enumerated, we conclude that there was insufficient evidence to support the determination to include the installment payments for tenant work within the base rent for purposes of the New York City commercial rent or occupancy tax. On the entire record, the administrative determination is not supported by substantial evidence, since there is no satisfactory proof from which respondents could have ruled that the payments were in consideration for the use and occupancy of the premises (cf., Matter of Debenhams, Inc. v Commissioner of Fin., N. Y. City, 117 AD2d 344).

It is generally recognized that a statute which imposes a tax is to be construed most strongly against the government and in favor of the taxpayer (American Locker Co. v City of New York, 308 NY 264, 269; Matter of Good Humor Corp. v McGoldrick, 289 NY 452, 455). It is equally settled that, as to statutory exclusions from taxation, there is a presumption in favor of the taxing power (Matter of Schwartzman, 262 App Div 635, 636, affd 288 NY 568), and it is the taxpayer who has the burden to establish that the challenged item comes within an exemption (Matter of Colt Indus. v New York City Dept. of Fin., supra, at 471; Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y., supra, at 99; Matter of Young v Bragalini, 3 NY2d 602, 605-606).

In this proceeding, while we agree under these facts that the challenged payments were not consideration for the use and occupancy of the premises, we also find that they fall within the "improvement" exception provided in Administrative Code § L46-1.0 (6), with respect to "expenses for the

improvement, repair or maintenance of the tenant's premises" *(see, Matter of SIN, Inc. v Department of Fin.,* 126 AD2d 339). We so conclude, notwithstanding, that the tennant does not expressly rely upon this "improvement" exclusion, but limits its argument to the contention that the payments were not for use and occupancy.

There is no basis for respondents' claim that the terms "improvement, repair or maintenance" all relate only to work to prevent or cure depreciation. This was the court's interpretation ascribed to "maintenance" in *Mobil Oil (supra).* The term "repairs" has been defined as "work which is done to property to keep it in good order. To restore to a sound state after decay, injury, dilapidation, or partial injury" (3 Bouvier's Law Dictionary 2886), and "to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be." (Black's Law Dictionary 1167 [5th ed].) In contrast, "improvement" is defined as a "valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes" (Black's Law Dictionary 682 [5th ed]; *see also,* 2 Bouvier's Law Dictionary 1517, which further notes, "It includes repairs or addition to buildings, and the erection of fences, barns, etc."). These terms clearly differ from "maintenance", which refers to work done to preserve the condition of the premises against the effects of depreciation *(Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y., supra,* at 100)—"The upkeep, or preserving the condition of property to be operated." (Black's Law Dictionary 859 [5th ed].)

Thus, the three exclusionary terms have separate and distinct meanings, respondents' interpretation to the contrary notwithstanding. This was recognized in *Matter of SIN, Inc. v Department of Fin. (supra).* "Improvement" is clearly dissimilar from either "maintenance" or "repair", and refers to something substantial in character—"Original construction or substantial reconstruction as distinguished from repair." (Ballentine's Law Dictionary 594 [3d ed].)

The substantial tenant work, the performance of which was at the tenant's sole option, clearly falls within the exclusion in Administrative Code § L46-1.0 (6). This conclusion flows naturally from the uncontradicted evidence in the record as to the nature of the improvements and the payments to be made

under the lease, in accordance with the parties' understanding and intention. The record of the administrative proceeding reflects an absence of any proof from which respondents could have reasonably reached a contrary determination, to include such payments as part of the base rent for the commercial rent or occupancy tax. Thus, since no additional tax was due on such payments for tenant work, for the reasons assigned, the notice of deficiency must be annulled to that extent.

Accordingly, in this transferred article 78 proceeding, the determination of the Commissioner of Finance, issued May 16, 1986, after a statutory hearing, assessing the petitioner under the New York City commercial rent or occupancy tax in the principal amount of $74,608.30, plus interest of $37,185.02, for a total of $111,793.32 for the period June 1, 1981 through May 31, 1984, should be annulled, on the law, without costs, and the petition granted solely with respect to the challenged assessment relating to petitioner's payment of $975,000 for certain tenant work for the leased premises at 805 Third Avenue, New York, New York.

KUPFERMAN, J. P., CARRO, ELLERIN and WALLACH, JJ., concur.

Determination of respondent Commissioner dated May 16, 1986, unanimously annulled, on the law, without costs and without disbursements, and the petition granted solely with respect to the challenged assessment relating to petitioner's payment of $975,000 for certain tenant work for the leased premises at 805 Third Avenue, New York, New York.