## HERSKOVITS v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### Nos. 127, 128.

Circuit Court of Appeals, Second Circuit.
March 18, 1940.

Andrew B. Trudgian, of New York City, for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

CHASE, Circuit Judge.

These two petitions to review deficiency determinations of income taxes are based on the same facts and were heard together.

The petitioners are brothers who in 1930 were in business, as they had been for some time, in the City of New York as importers and exporters of raw furs. In the year stated each of them loaned to Max M. Frank of Berlin, Germany, an old friend and customer of theirs for many years, the sum of $7,000. Frank was then a wealthy man but soon suffered financial reverses and was adjudicated a bankrupt under German law in 1931. There is nothing to show that the debt owed either petitioner was listed in the bankruptcy proceedings or that either ever became a party thereto.

Frank arranged a composition under which his nonpreferred creditors were to

be paid 8 per cent of their claims. That was duly confirmed early in 1932 and he thereafter carried on business in Berlin, Germany, during 1933 and part of 1934. Instead of paying the petitioners, who were unsecured creditors, the eight per cent he had promised to pay on such claims, Frank, after the bankruptcy proceedings were ended, told W. Irving Herskovits in 1932 that he would repay the money he had borrowed from him and from his brother. Frank made a similar promise the next year. It was proved and found that under German law a discharged bankrupt who orally promises a former creditor that he will pay him is bound by the promise. The petitioners had actual knowledge of Frank's bankruptcy proceedings and also of his continuance in business and the Board has found that they "relied on his statement, after his bankruptcy, that he would repay them the money loaned him".

In 1934, the petitioners were informed by Frank that his personal affairs were "all shot to pieces" and on February 16, 1935 he wrote them that there was no possibility of his paying the money he owed them. He committed suicide the following October.

■■ On the foregoing facts, we cannot agree with the Board that the petitioners failed to show justification for charging their debts off as worthless in 1934. They could not become entitled to do that merely by showing good faith and the Commissioner's determination is prima facie correct. Avery v. Commissioner, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277. So too, the burden is on petitioners to show that the Board was in error in finding that the petitioners did not ascertain the debts to be worthless in the year (1934) in which they were actually charged off. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.

■■ But in giving effect to the German law proved and found as above stated, the Board could do no less than hold that both in 1932 and 1933 Frank owed the petitioners the amount he promised to pay them. Unless he were judgment proof, each of them could have recovered on his cause of action against Frank. This does not, of course, amount to any compulsion to find that they could have in either year collected their debts. But the Board did find that they relied on each of Frank's renewed promises to pay and that was enough to justify their treatment of the debts as though they were collectible.

■■ Taxpayers should be given a reasonable amount of discretion in such matters when acting in good faith. Moore v. Commissioner, 2 Cir., 101 F.2d 704; Sherman & Bryan, Inc., v. Blair, 2 Cir., 35 F. 2d 713; Blair v. Commissioner, 2 Cir., 91 F.2d 992. They were dealing with an old friend whose former ample means they knew had been depleted but he was still doing business and was still promising to pay them until the year 1934. In the year when first they were flatly informed that Frank's affairs were "all shot to pieces" and that he could not pay, they did charge off the debt as worthless. It seems clear that this was the first year when they would have been justified in taking such action.

■■ The more serious aspect of the appeal is not whether they should have charged off the debts before but whether in 1934 they had a sufficient basis for so doing. There ought ordinarily to be some event like a determined and futile effort to collect or such a definite change in the debtor's position that the taxpayer may point to that as the cause of the decision to charge off. We think the latter was adequately proved by showing that the petitioners knew in 1934 that the personal affairs of their debtor in Berlin, Germany, were "all shot to pieces" and that instead of continuing to promise to pay them he stated that he could not pay them at all.

We think the findings of the Board justify each charge-off in 1934 and that as a matter of law the deductions were properly taken by the petitioners.

Reversed.