Esther K. Cogan v. Commissioner.
Cogan v. Commissioner
Docket No. 4325-70 SC.
United States Tax Court
T.C. Memo 1971-251; 1971 Tax Ct. Memo LEXIS 80; 30 T.C.M. (CCH) 1084; T.C.M. (RIA) 71251; September 29, 1971, Filed. *80 Bad debts: Advances to son: Business v. nonbusiness debts: Bona fide debts. - A mother advanced funds to her son and guaranteed loans to him from banks without his knowledge. The Court held that the advances did not create any bona fide indebtedness but that the guarantees were made with a real expectation of repayment and an intent to enforce collection. Accordingly, she was entitled to a nonbusiness bad debt deduction for payments made under the guarantees, in the year that the debt became worthless. Dependency exemptions: Parents: Support test. - A CPA could not document the amounts expended for the support of her parents. Applying the Cohan principle, the Court found that she was entitled to a dependency exemption for her mother, but not for her father. She was therefore allowed to compute her tax as head of a household. - CCH. Esther K. Cogan, pro se, 1108 S. Sherbourne Drive, Los Angeles, Calif.Sheldon M. Sisson, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: The respondent has determined a deficiency of $996.23 in petitioner's Federal income tax for the taxable year 1967. The issues for decision are (1) whether petitioner is *81 entitled to a nonbusiness bad debt deduction of $5,366.82 in 1967 under the provisions of section 166(d) (1)(B) of the Internal Revenue Code[1] and (2) whether petitioner provided more than one half of the support for her parents entitling her to claim dependency exemptions for them under sections 151 and 152. Respondent concedes that if petitioner's claim to one or more of the dependency exemptions is upheld, she will be entitled to head of household rates under section 2(b). The petitioner in her petition claimed a bad debt deduction pursuant to section 166 in the amount of $3,700. [2] Findings of Fact Some of the facts have been stipulated and they are so found. Petitioner resided in Los Angeles, California when she filed *82 her petition. The petitioner has been a Certified Public Accountant for fifteen years 1085 and was practicing as such in the taxable year. For twenty years she has been engaged in preparing Federal and State income tax returns. She has never been admitted to practice before this Court. She is employed on a part time basis by Los Angeles City College to teach a course in Federal taxes. She has taught such a course for ten years. In the taxable year 1967 she also was employed full time as a controller with the anti-poverty program. The petitioner is the daughter of Celia and Isadore Kopulsky. In 1967, Celia was 71 years old; Isadore was 75. The Kopulsky's have five children who reside in New York, Riverside, Woodland Hills, and, Los Angeles. Riverside and Woodland Hills are close to Los Angeles. The petitioner has a son and a daughter. In 1967, her son, Gary, was 26 years old. Her daughter is older than Gary. Gary is married and has three young children. In 1967, Gary, his wife and children resided in a rented apartment. His wife did not work. In 1962, Gary entered into business as the proprietor of a swimming pool service company. He obtained a series of loans from the United California *83 Bank in the period 1962 through 1965. Each loan was guaranteed by petitioner with her savings account pledged as collateral. The records of United California Bank reflect the following loans made to Gary Cogan: September 11, 1962 - $1,600. The loan was secured by a savings account of Esther K. Cogan. The balance of $900 was paid by a renewal note on November 4, 1963. October 11, 1962 - $1,400. Secured by savings account of Esther K. Cogan. The balance of $900 was paid by a renewal note on November 4, 1963. October 14, 1963 - $1,800. A renewal of the reduced balance of the two preceding loans. Secured by savings account of Esther K. Cogan. The balance of $800 was paid by renewal on October 14, 1964. October 14, 1964 - $800. Reduced renewal of preceding loan. Secured by Esther K. Cogan's savings account. Paid in full March 19, 1965. On February 4, 1966, Gary contracted a respiratory infection. He entered the hospital on February 5, 1966 and was discharged on the 9th of February. However, he was unable to resume work until the spring of 1966. Before Gary's illness, the United California Bank made two additional loans to Gary: September 20, 1965 - $1,200. Secured by savings account of *84 Esther K. Cogan; November 22, 1965 - $2,500. Secured by savings account of Esther K. Cogan. In connection with these loans (and those of September 11, 1962, October 11, 1962, October 14, 1963, November 4, 1963 and October 14, 1964) the records of the United California Bank were marked to show "the borrower was not to be aware that a savings account had been pledged by his mother as collateral." Although Gary recovered from his illness of February 1966, his business had deteriorated. There were collection problems with the bank loans beginning in March, 1966 and Mrs. Cogan was called upon to honor her guaranty. The total amount she had to pay under her guaranty was $3,447.13. This payment was made in 1966. In her income tax return for 1967, petitioner claimed a deduction of $3,700 as the amount of loss arising out of her guaranty. Between September and November of 1966, Gary was attempting to obtain a Small Business Administration loan to finance his business. He was unsuccessful. During September, October and November 1966, petitioner paid her son's business and personal bills and also advanced funds to him. The total of these disbursements was $1,919.69. Gary Cogan did not execute *85 a note for this amount. There was no agreement to pay interest on the payments or advances. There was no agreement as to date of repayment. The petitioner did not claim this amount as a bad debt deduction on her tax return for 1967. However, at the trial she made claim to a bad debt deduction for such disbursements in 1967. On January 20, 1967, a petition in bankruptcy was filed and Gary was adjudicated as bankrupt on March 28, 1967. Mrs. Cogan was not scheduled as a creditor in the bankruptcy proceeding. She had not received a note for the amount paid the bank or for other advances or payments. Nor did she receive any interest income as a result of any of the guaranties of Gary's obligations. She received verbal assurances from her son after the bankruptcy that he would repay his debt to her. Several other creditors received similar assurances. 1086 In February 1967, Gary took a job with the Purex Corporation, which serviced swimming pools, as a service engineer at a salary of $160.00 per week, plus a car and expenses. The job lasted until June 1967 - when Gary became permanently disabled. After Gary became disabled he received social security disability payments and aid for the *86 totally disabled. The petitioner's parents, the Kopulskys, resided in their own apartment during January and February 1967. For the balance of the year they resided in a rest home. During 1967, Isadore and Celia Kopulsky received Old Age Assistance (OAS) from the county and social security benefit payments as follows: Isadore (OAS)
$930.00
Cella (OAS)
1,403.00
Both (Social Security) 1,507.00
Total
$3,840.00
Celia Kopulsky was under the care of Louis S. Kramer, M.D. for four years prior to 1967. She had a diagnosis of advanced Osteoarthritis of both hips and the back. By 1967, her disease advanced to the stage where she was unable to walk and care for herself. Isadore Kopulsky was under Dr. Kramer's care from 1964 to 1967. His diagnosis was cerebral atherosclerosis with severe senility. He wandered from his home for hours or days at a time and was out of touch most of the time with his mental processes. The children were advised that the parents should be placed in a sanatorium. From 1938 through the mid-1950s, Mr. Kopulsky was employed at various Los Angeles department stores. In 1967 Isadore and Celia had no savings accounts in their own name and little, if any, other assets; however, for *87 many years Mr. Kopulsky had had joint savings and checking accounts with the petitioner. During 1967 petitioner's gross income was roughly $14,000. She purchased a new car and new furniture. She did not use any funds from the savings accounts in 1967 to provide assistance for her parents. Nor did any other child furnish assistance. The Old Age Assistance checks were deposited to her checking account. The Social Security funds received by and controlled by her father in 1967 were used for the support of Mr. and Mrs. Kopulsky except that a social security check in the approximate amount of $126 together with other monies totalling $400 was erroneously deposited to a checking account of his fraternal lodge. He was the treasurer of the lodge's cemetery fund. He also used $628 of his social security benefit payments as part payment in discharge of a credit union loan to him in the amount of $1,067. The petitioner claimed the following represents total support of her parents for 1967: Personal
Rest
Residence
Home
Rent
$345
$3,500
Food
300
420
Utilities 15
$660
$3,920
$4,580
Telephone
20
100
120
Cleaning, etc. 80
80
$760
$4,020
$4,780
Clothing (coats, 2 suits, dresses, shoes, shirts, underwear, sox,
robes, supp-hose, etc.)
750 Est.
Medical and dental
2,707
Medicines & Drugs
120 Est.
Doctors, hospital, etc.
115
Nursing care (12/27/66-3/1/67) (10 hrs. a day at $3X 6 days =
$175 a week X 9 weeks)
1,575
Nursing care (part time same period - 7 days at $25 each day)
175
Nursing - other expenses
252
Carfare - 63 days at $1.50
Food - 63 days at $2.50
Nurse - extra bed & linens for nurses
50
Nurse - for back and other personal needs 420
Travel - recreation
$180 Est.
(includes travel to doctors, etc. and auto travel to visit family
in San Fernando Valley, Riverside and Mineral Baths)
TV Repairs 60
$240
Other -
Cleaners & Laundry
180 Est.
Haircuts, beauty & personal care expense
120est.
Gifts to children & grandchildren (includes gift of new bedroom
set - wedding gift) 650
950
$9,427
*88 1087 Clothing, medical, travel, recreation, laundry and cleaning were estimates. No documentary evidence was presented to substantiate the claimed nursing expense. Petitioner expended not more than $1,236 for nursing care and not more than $350 for clothing for her parents in 1967. Isadore and Celia Kopulsky provided funds from old age and social security benefit payments toward their support in the amount of $1,543 each in 1967. Ultimate Facts Gary Cogan was indebted to his mother in the amount of $3,447.13 which debt became worthless in 1967. Celia Kopulsky received over half her support from the petitioner in 1967. Isadore Kopulsky did not receive over half his support from the petitioner in 1967. Opinion Bad Debts - Petitioner raised a new issue at trial in claiming a bad debt deduction under section 166(d) in the total amount of $1,919.69, based on advances of $1,250 she made to her son Gary in 1966 for personal use and for payments of certain of his business expenses of not more than about $650. Petitioner was granted leave to offer evidence on this issue if she filed an amended petition within thirty days from the trial date. Although she failed to file an amended petition, *89 she has discussed the issue in her brief. Since the petitioner represents herself, we have disregarded her failure to file an amended petition and have considered the merits of her claim. In examining the record with the close scrutiny required of family financial transactions, we have concluded that no bona fide debt was created by these advances. Petitioner did not require her son to execute a note for these amounts; there was no agreement to pay interest; and, no time was fixed for repayment. The alleged debt was not scheduled in the bankruptcy proceedings; nor was it claimed as a bad debt deduction in petitioner's tax return. We are not convinced by petitioner's explanation of the reason the deduction was not claimed on her tax return for the taxable year 1967. We cannot believe that, considering the surrounding facts and circumstances in which the payments and advances were made, petitioner intended to enforce collection of them against her son who was the sole support of his wife and three young children. Lacking this intent there is no clear showing that a debtor-creditor status was created; the advances and payments are presumed to be gifts. William Francis Mercil, 24 T.C. 1150 (1955); *90 Estate of Carr V. Van Anda, 12 T.C. 1158 (1949) aff'd per curiam 192 F. 2d 391; C.B. Hayes, 17 B.T.A. 86 (1929). See Evans Clark, 18 T.C. 780 (1952). We think payment to the United California Bank stands on a different footing. For many years prior to the taxable year, petitioner had guaranteed loans by the bank to her son. While her concealment from him of the fact of her guaranty raises some question as to whether her ultimate payments under the guaranty represent gifts, we are satisfied that, more probably, she was motivated by a desire to instill confidence in her son in the ultimate success of his business enterprise. We think that, at the time of the transaction, there existed a real expectation of repayment and an intent to enforce collection. Giffen Andrew, 54 T.C. 239 (1970). Accordingly, we have found that petitioner did not intend to make a gift to her son at the time she made the guaranties in question. Cf. Kate Baker Sherman, 18 T.C. 746 (1952). We next consider the question of when this debt of Gary became worthless - the year of payment (1966) or the year of bankruptcy and illness (1967). The respondent argues that the debt became 1088 worthless in 1966 and was deductible *91 only in that year under the provisions of section 166(f). The record on this score is less than clear. It is true, that toward the close of 1966, Gary's business affairs were in a sad state and that the value of a debt cannot be based on hope alone. However, as has been often pointed out, in determining when a debt becomes worthless hindsight is much better than foresight. The record shows that between September and November 1966 Gary was negotiating a loan with the Small Business Administration. The fact that his application was turned down sometime in November does not mean that at that instant the debt became worthless. [3] *92 Giving the petitioner the reasonable amount of discretion which is her due while acting in good faith and with her son's promise of payment, we think that the debt did not become worthless in 1966. Cf. Herskovits v. Commissioner, 110 F. 2d 272 (C.A. 2, 1940). We hold that the debt of Gary Cogan to petitioner in the amount of $3,447.13 arising out of the payment by petitioner to the United California Bank became worthless in 1967. Petitioner is not entitled to the benefit of section 166(f) in 1967. Since she paid the guarantee in 1966, she cannot claim the deduction in 1967 under section 166(f). Giffen Andrew, supra.Petitioner is entitled to a deduction for the loss of $3,447.13 as a nonbusiness bad debt becoming worthless in the taxable year 1967 under section 166 (d)(1)(B). Dependency Exemptions - The petitioner's evidence in support of her claim for the dependency exemptions for her parents consists in large part of unsubstantiated estimates. This is disturbing since she is an experienced Certified Public Accountant who prepares Federal income tax returns and who also teaches a course in Federal taxes. While her explantion for the failure to document many of her expenditures for nurses is that receipts were lost in moving her parents in the taxable year, her testimony with respect to the commingling of her funds with funds admittedly belonging to one or both of her parents is confusing. It certainly is less clear than one might *93 expect from an experienced accountant. The payment of large sums of money in cash rather than by check under the circumstances is unusual, even if receipts were obtained. Consequently, we share respondent's concern as to the accuracy of the amounts claimed to have been expended by the petitioner in support of her parents. However, on the basis of all the evidence, it appears that all of the claimed expenditures by the petitioner should not be disallowed. Respondent argues that petitioner's claimed expenditures in support of her parents constituted a large part of her total income for the taxable year, particulary since the petitioner in the same year completely refurnished her apartment and purchased a new Chrysler automobile. Therefore, he says, it is incumbent upon petitioner to provide documentation for her claims. We think that the nature of the items claimed are, under all the facts of this case, such as to be susceptible to the application of the rule in Cohan v. Commissioner, 39 F. 2d 540, 543 (C.A. 2, 1930). One of the problems in this case arises out of the admitted commingling of funds. It appears that petitioner and her father had at least one joint checking account and *94 that they were listed jointly on several savings accounts. The petitioner could not recall how many such accounts were held jointly. However, she did testify that all the funds in joint accounts except amounts received in payments for old age assistance and social security benefits were hers. Since joint bank accounts are commonly used for testamentary purposes, it is not believed that any inferences adverse to the petitioner can be drawn merely from the existence of such accounts. The major thrust of the respondent's arguments is based on the contention that more than half the support of petitioner's parents was derived from old age assistance benefit payments and social security benefit payments. He buttresses his position with the contention that (1) there is no documentation to substantiate the large nursing expenditures claimed (2) there is no such proof in support of petitioner's testimony that she supplied the funds for payment of the rent of the parents' apartment at Citrus Avenue or the nursing home at Celta Vista. Petitioner contends that the old age assistance and social security benefits received 1089 by her parents in 1967 should be reduced by amounts of such benefits *95 not used for their support. She admits the old age assistance benefits in the total amount of $2,333 were so used; she contends that $1,467 of the total of $1,507 in social security benefits were used for other purposes. She testified that early in 1967 her father erroneously deposited his social security check and other sums in total amount of $400 to a checking account of his fraternal lodge. Later, on June 8, he paid off a loan from the Federal Employees and Regional Postal Credit Union in the amount of $1,067.52 which amount petitioner contends was paid with social security benefits. The record does not show but we must assume that social security benefits are paid by monthly check. Therefore, with respect to the payment of $400 in the Lodge checking account, Isadore Kopulsky's "social security check" could scarcely have exceeded about $126. With respect to the repayment of the balance of $1,067.52 loan in June, Isadore could not have accumulated as social security benefit payments more than $754 less $126 previously deposited in error in the Lodge account or $628. This left available out of old age assistance and social security benefits for the support of petitioner's parents *96 a total of $3,086. Allocated equally between parents this amounts to $1,543 each. Petitioner contends that the total amount expended for the support of her parents out of her funds and her parents' funds amounted to $8,780 [4] in the taxable year. She allocates this amount to her parents as follows: Total
Isadore
Celia
Amount
Kopulsky
Kopulsky
$8,780
$3,077
$5,703
It can be seen by inspection that, even assuming arguendo that petitioner's estimated disbursements are accurate, over half of the support of Isadore Kopulsky was derived from old age assistance and social security benefits. The total amount expended in support of Isadore and Celia Kopulsky did not exceed $7,144. Turning next to the question whether petitioner has supplied over half the support for her mother, Celia Kopulsky, we repeat our concern when a taxpayer with the professional qualifications and experience of the petitioner fails to produce substantiating documentation of large *97 expenditures. Although she states that she was unable to find the registered nurse to whom these large sums were paid, the record is bare of any showing of petitioner's efforts toward that end. Furthermore, although large expenditures were allegedly made for the purchase of clothing for her parents, no receipts, no checks or other records were kept of such purchases. Consequently, we have borne down quite heavily on petitioner with respect to her estimates for nursing care and clothing. In view of the physical condition of Mrs. Kopulsky we cannot say that no expenditures could have been incurred for her nursing care. Therefore, we have found that instead of $2,472 the amount expended for nursing care by petitioner was $1,236. As to clothing expenditures we have found that a total of $350 was expended for clothing allocated $175 to each parent. We have examined the remaining items of expenditure claimed but make no change since we cannot say that they are unreasonable even though estimated amounts are used. We therefore find that of the total amount of $4,292 expended in support of Celia Kopulsky $1,543 was supplied through old age assistance and social security benefit payments and *98 $2,749 was supplied by petitioner. Respondent argues that petitioner has not shown the amount of support given each parent. She has established that the nursing expenditures were incurred with respect to her mother. Revenue Ruling 64-222, Cumulative Bulletin 1964-2, 47, provides that where members of a household contribute to their own support and also receive support from an individual outside the household not sharing in the common fund, in the absence of evidence of actual support, the individual outside the household will be considered to be contributing equal amounts to each member of the household. Similarly, in absence of an actual record, the Kopulskys' contribution toward their own support should be applied equally for the support of each. Revenue Ruling 235, Cumulative Bulletin 1953-2, 23. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. 1090 Footnotes
1. All Code section references are to theinternal Revenue Code of 1954, as amended. ↩
2. On page iii of her brief, petitioner cites section 166(d)(1)(B) as the specific statutory provision relied upon with respect to her claim for a bad debt deduction. On page 15 of the brief, she sets forth the provisions of section 166(f). However, the argument which follows involves reliance upon section 166(d)(1) (B)↩, the provisions of which are also set out on page 15 of the brief.
3. We think there is a factual difference between this case and James E. Walsh, Jr., T.C. Memo. 1961-298, relied upon by respondent. There was testimony as to facts which must be arrived at by inference here to support respondent's case. And it was upon those facts that the ultimate fact of worthlessness was based.
4. This is $3 more than originally claimed by petitioner after elimination of $650 representing gifts to children and grandchildren claimed as a support item. The difference represents an increase in claimed hospital and doctors' bills from $115 to $118.↩