LEO J. FITZPATRICK II and ELIZABETH L. FITZPATRICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fitzpatrick v. Commissioner
Docket No. 6354-74.
United States Tax Court
T.C. Memo 1978-27; 1978 Tax Ct. Memo LEXIS 488; 37 T.C.M. (CCH) 159; T.C.M. (RIA) 780027; January 23, 1978, Filed *488 Petitioner and another began a new corporation in the business of manufacturing interior packaging products. Petitioner was employed by the corporation as its president and chief operating officer. Over a period of years he loaned a large sum of money to the corporation and eventually he was forced to sell the note at a loss. Held, petitioner's loans were made with an investment motive and, therefore, gave rise to a nonbusiness debt. Respondent contended for the first time at trial that petitioner compromised a debt not wholly worthless. Held,further, respondent raised a new matter under Rule 142(a), Tax Court Rules of Practice and Procedure, and failed to carry his burden of proof. Mark K. Wilson, for the petitioners Ronald T. Murphy, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1966
$3,207.76
1967
9,345.00
1969
200.00
The principal issue is whether losses sustained in connection with a loan made by petitioner Leo Fitzpatrick II are deductible under section 166, I.R.C., [1] as business bad debts or nonbusiness bad debts. Also at issue is whether the debt owed by the corporate employer to petitioners was wholly or partially worthless. The issue of worthlessness was introduced subsequent to trial by respondent in his "Motion to File an Amendment to the Answer to Conform the Pleadings to the Proof Pursuant to Leave Granted at Trial," which was granted by the Court. *490 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners, Leo J. Fitzpatrick II and Elizabeth L. Fitzpatrick, were husband and wife at the time of filing their joint income tax returns for the years 1966, 1967 and 1969. On the date of the filing of their petition they were legally divorced. Leo Fitzpatrick II resided in Oak Park, Mich., and Elizabeth L. Fitzpatrick resided in Grosse Pointe, Mich. Since Elizabeth Fitzpatrick is a party solely by reason of having filed a joint return with her husband for the years in issue, Leo Fitzpatrick II will hereafter be referred to as petitioner. From 1960 to early 1967, petitioner was employed by the Manufacturers National Bank of Detroit. He served at various times as teller, administrative assistant, branch manager, public relations officer and commercial loan officer.As a bank employee petitioner's annual salary never exceeded $9,500. After seven years with the bank, he believed his salary was inadequate and his future advancement limited. Therefore, upon being denied a promotion, petitioner began to search for alternative *491 employment opportunities. In his search, petitioner met Mr. Hazen Carroll (hereinafter referred to as Carroll), president and owner of Carroll Container Corp., a large independent corrugated box manufacturer. Carroll convinced petitioner that market parameters indicated a new material was needed to replace the increasingly more expensive paper products used for interior packaging. Carroll proposed that he and petitioner pool their financial resources to form a company, the purpose of which was to develop and market plastic packing materials. After several meetings with Carroll and various industry representatives, petitioner decided Carroll's proposition "was a good opportunity for me to make a good salary and make a good future for myself." Petitioner anticipated that within three years his annual salary would be $40,000 to $50,000, but he never actually entered into any kind of salary agreement with either the new corporation or Carroll. In June 1967 petitioner and Carroll formed Carroll Plastics, Inc. (hereafter referred to as Carroll Plastics). Each received 50 percent of the voting stock by virtue of their equal contributions to capital of $11,750. Petitioner agreed *492 to contribute his full-time services as the president and chief operating officer of their corporation. His duties included the acquisition of necessary equipment, the training of personnel, and the development of a packaging process. Carroll agreed to provide the sales representatives necessary for Carroll Plastics from the sales force of the Carroll Container Corp., which also leased part of its manufacturing facilities to Carroll Plastics. Carroll Plastics paid salaries to seven full-time employees in 1967. Petitioner, however, drew no salary because he believed "the most important thing was to pay the employees so that we could get started in business * * * and give the company every break I could give it in order to succeed." A few months after commencing operations, Carroll Plastics required additional operating capital. Accordingly, petitioner loaned $32,000 to the corporation during the taxable year 1967. The source of the funds was proceeds from the sale of investment holdings which had been given to petitioner by his parents. Petitioner's adjusted gross income in 1967 was $46,374, primarily from investments. Carroll Plastics experienced increased sales and expenses *493 in 1968. To meet those expenses Carroll and petitioner each purchased $8,000 worth of additional stock. Petitioner also loaned the corporation an additional $23,000. During the year, the corporation paid petitioner a salary of $7,500. In 1969 Carroll Container Corp. began to experience financial difficulties thereby forcing Carroll and his salesmen to neglect Carroll Plastics. As a result, petitioner was forced to recruit and train an independent sales staff. Burdened by increased operating expenses, Carroll Plastics suffered severe cash flow problems.When Carroll refused to contribute any more capital, petitioner, who was himself without funds, induced his parents to each purchase $10,000 worth of nonvoting stock. However, this additional capital only allowed the corporation to continue operating for a short time and by August the company was again without operating capital. At this point petitioner was unable to secure any more financing. Rather than allow the corporation to lapse into bankruptcy, petitioner's auditors and attorney recommended that he sell his interest in the corporation to Carroll. Petitioner accepted $6,000 for the $55,143.75 worth of unsecured indebtedness *494 owed to him and approximately $3,000 for his stock. At the time of the sale to Carroll, petitioner's 1969 earnings from Carroll Plastics totaled $7,600. This sum constituted 100 percent of petitioner's earnings and 93 percent of his adjusted gross income in 1969. For the taxable year 1969, petitioner reported a net operating loss of $70,220. Petitioner applied for an income tax refund for the taxable years 1966 and 1967, based upon a carryback adjustment of the net operating loss. Pursuant to his application, petitioner was refunded $10,430.54 and $9,345 for the years 1966 and 1967, respectively. Subsequently, the Commissioner issued a statutory notice of deficiency, disallowing the treatment of the loans to Carroll Plastics as business bad debts in 1969. As a result, the Commissioner disallowed the net operating loss carrybacks to 1966 and 1967 in the amounts of $43,527.68 and $26,692, respectively. At the close of the trial, the Court granted respondent's motion to amend his pleadings to allege that the loans made by petitioner were not worthless debts at the time petitioner compromised them in 1969. OPINION The first question for our consideration is whether the *495 debt owed petitioner by Carroll Plastics was a business or a nonbusiness debt within the meaning of section 166. The parties agree that petitioner was owed $55,143.75. They differ as to the characterization of the debt and as to whether the debt was wholly or partially worthless. Section 166 allows a deduction for debts which become wholly or partially worthless during the taxable year. If the $49,143.75 balance owed petitioner on his $55,143.75 loan to Carroll Plastics is a business debt, the amount found to be worthless, whether in whole or in part, is fully deductible against ordinary income. If that debt is of a nonbusiness nature, it is deductible (subject to the limitations of section 1211) only if it is found wholly worthless at the time it was compromised. Section 166(d)(2) defines a nonbusiness bad debt as: a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness *496 of which is incurred in the taxpayer's trade or business. Being an employee can constitute one's trade or business, Trent v. Commissioner,291 F. 2d 669 (2d Cir. 1961). Being an investor cannot. When a taxpayer is both an employee of and an investor in a corporation, either one of two motives may explain why the taxpayer would loan money to the corporation. If the taxpayer's motive in making the loan is to protect or enhance his employment status and he sustains a loss on the loan, he will be allowed a business bad debt deduction. However, if the taxpayer is motivated to loan money for investment purposes, he will be allowed a nonbusiness bad debt deduction only. Therefore, an inquiry into motive is necessary where the taxpayer is both an employee and a shareholder (investor). In United States v. Generes,405 U.S. 93 (1972), the Supreme Court held that where a taxpayer has a duel motive, the employment motive must be dominant for the debt created to constitute a business debt. Otherwise, the loan is not made in the course of his trade or business *497 and does not constitute a business debt. The determination of petitioner's dominant motive is a factual inquiry with petitioner having the burden of proof, Smith v. Commissioner,55 T.C. 260 (1970), remanded for consideration in light of Generes at 457 F. 2d 797 (5th Cir. 1972), opinion on remand 60 T.C. 316 (1973). Petitioner argues that the loans were made in the course of his trade or business as an employee of Carroll Plastics, and that the dominant motive for his action was to preserve his status as an employee. He contends that without his loans Carroll Plastics would have ceased business operations causing him to become unemployed. Respondent argues that petitioner's loans did not arise in the course of his trade or business as an employee but as a result of his investment activities in the corporation. Alternatively, respondent argues that even if petitioner was pursuing the trade or business of an employee, this was not the petitioner's dominant motive when he made the loans. Whether an employee's dominant motive in advancing *498 money was to protect or promote his employment must be determined by objective criteria, United States v. Generes,supra.Factors considered include, among other things, the ratio between the taxpayer's salary and his investment, Gross v. Commissioner,401 F. 2d 600, 602 (9th Cir. 1968), the risk of the loan and the potential reward, Generes at p. 104, and the amount of time and energy expended by the employee for the corporation and others. But giving one's full time to a corporation does not in itself mean all actions are in the course of one's trade or business as an employee, Whipple v. Commissioner,373 U.S. 193 (1963). Similarly, the furnishing of management services, Kelly v. Patterson,331 F. 2d 753 (5th Cir. 1964), or the mere receipt of salary [2] has been held to be insufficient to show an employment motive. For example, where a taxpayer loaned money to his corporate employer at the risk of otherwise losing his job the loan was found to be an act conducted in the course of his trade or business of being an employee, Trent v. Commissioner,supra.An examination of the *499 ratio of the taxpayer's salary to his gross income as evidence of the salary's importance to the taxpayer's income may also be worthwhile. It may serve as an additional factor in determining how important the salary is to the taxpayer. We believe petitioner was motivated in part by the desire to protect his trade or business as an employee when he loaned money to Carroll Plastics. However, petitioner's argument that the dominant motive for his loans was to protect his employment (as opposed to his investment) is not persuasive. In 1967, petitioner received no salary from his employer. [3] Had petitioner lost his job as president of Carroll Plastics, Inc., in 1967, he stood to lose a sizable investment but he would have lost nothing as a salaried employee. To assert that a loan is motivated by one's employment status is certainly more persuasive where its objective is to protect a present salary rather than to promote a future one. Putoma Corp. v. Commissioner,66 T.C. 652, 674 (1976), on appeal (5th Cir., Mar. 14, 1977, by the respondent, and Apr. 11, 1977, by the petitioner). Petitioner's *500 willingness to forego compensation for his services in 1967 suggests to us that he was much more interested in promoting the corporation in his capacity as an investor than in his capacity as an employee. Petitioner was optimistic about its future success. In the taxable years 1968 and 1969 when petitioner earned salaries of $7,500 and $7,616, respectively, a dual motive is more apparent because petitioner began to draw a salary. The possibility that a taxpayer's dominant motive could shift from one of investment interest to one of employment cannot be dismissed. For example, if one's investment remains constant but his salary increases substantially, the notion of a change in motive for any future loans must be considered. But petitioner fails to convince us that a sufficient change in motive occurred between 1967 and 1968. In 1968 petitioner's investment ($31,000) greatly exceeded his salary ($7,500). The disparity between his *501 interest as an investor and his interest as an employee, as represented by his salary, does not suggest a shift in his dominant motive. Nor did petitioner present any evidence to suggest such a shift occurred. Petitioner continued to believe Carroll Plastics would be a great success and the thought of saving a job does not to us seem warranted as his primary motive for $31,000 in loans. In 1969, petitioner's loans ( $500) were insignificant in relation to his salary ($7,616). While this may suggest a change in motive, based on all of the evidence presented, we conclude that while petitioner's motive might have shifted from one that is less investment-oriented to one that is more employment-oriented, petitioner has failed to carry his burden of proof to show his overriding desire was to protect his job.Petitioner was with Carroll Plastics a relatively short time doing work which cannot be described as highly specialized and earning a salary which was comparable to that which he had earned in his previous employment. These factors tend to negate any overriding reason why petitioner should seek to protect this particular employment position. While it is true petitioner's salary *502 in 1969 far exceeded his additional investment in that year, it still paled by comparison to the total investment which we must assume he sought to protect. Petitioner always believed Carroll Plastics would be a great success. His testimony about the company was directed toward an increase in the corporation's worth, not the salary he was to be paid. Petitioner cites Haslam v. Commissioner,T.C. Memo. 1974-97, as grounds for a finding that all of his loans were employment-motivated. Petitioner's situation can be distinguished from Haslam, however. In Haslam, the taxpayer had been a salaried employee for ten years and had been an employee six years prior to guaranteeing the loans which protected his employment. Also, the taxpayer sought to protect a career in a highly specialized field, close to his retirement, which dated back 12 years with his employer. Haslam's salary was $15,000 and his equity investment was $20,000 (75 percent). The second issue for our consideration is whether the loans made by petitioner became wholly or partially worthless in 1969. See section 1.166-5, Income Tax Regs. In deciding the question *503 we must first determine whether this issue, which was raised by respondent at the end of trial, is a new matter, thereby shifting the burden of proof to respondent. Rule 142(a), Tax Court Rules of Practice and Procedure. At the conclusion of the hearing for this proceeding the Court granted, over petitioner's objection, respondent's motion to amend his pleadings to include an argument that the debt was not entirely worthless. The notice of deficiency reads in part: It is determined that the funds transferred represented contributions to capital instead of loans. If, however, it is found that these transfers were loans, it is determined that the debt was nonbusiness bad debt because it was a personal loan and was not created in connection with your trade or business. In the latter case, the loss is subject to the limitations of Section 1211 of the Internal Revenue Code. Thus, it was respondent's position that if the transfers were not contributions to capital, they were personal loans whose deductibility is limited under section 1211. A new matter is suggested *504 where the evidence required to prove the issue raised differs from that which was presented to decide the original issue. Estate of Falese v. Commissioner,58 T.C. 895, 899 (1972); McCormick v. Commissioner,38 B.T.A. 308 (1938); Gulledge v. Commissioner,T.C. Memo. 1957-29. Respondent's assertion that the debts were not worthless requires evidence different from that which addresses the issue of the characterization of the debt. Therefore, we find respondent has raised a new matter with respect to the issue of worthlessness and he has the burden of proof. Whether a debt is worthless is a factual question which must be determined on the basis of reasonableness, common sense, economic reality, and the reasonable probability of its ultimate collection. Cimarron Trust Estate v. Commissioner,59 T.C. 195, 199 (1972); Home Agency Co. v. Commissioner,T.C. Memo. 1966-48; Washington Institute of Technology v. Commissioner, a Memorandum Opinion of this Court dated Jan. 9, 1951. In assessing the taxpayer's *505 decision to declare the debt worthless, he should be given a reasonable amount of discretion when acting in good faith, Herskovits v. Commissioner,110 F. 2d 272 (2d Cir. 1940). When petitioner compromised his loans, Carroll Plastics had assets of $53,382.52 and liabilities of $111,595.53. No priority of creditors was indicated but the loans by petitioner were unsecured. The respondent argues that the liquidation of assets would have resulted in petitioner receiving 49 percent of the $55,143.75 debt owed him which was the ratio of assets to liabilities of Carroll Plastics. Respondent also contends that the debt was not worthless in 1969 because the corporation continued to operate after petitioner sold his interest. We find respondent has failed to carry his burden of proof because his case is founded only on assumptions. First, respondent assumes a liquidation of assets would return 100 percent of their stated book value. The simple response to this is respondent ignores the costs of a liquidation such as the petitioner's time and his attorney fees and the ongoing business expenses of the company. Second, the possibility of collecting the debt is determined *506 by facts known at the time collection is attempted, and not by subsequent events. A bare hope that something might be recovered in the future constitutes no sound reason for postponing the time for taking a deduction, Montgomery v. United States,23 F. Supp. 130, 135 (Ct. Cl. 1938), cert. denied 307 U.S. 632 (1939). What occurs after collection is attempted cannot evidence whether the debt was worthless. Therefore, the continuation of Carroll Plastics as a going concern after petitioner sold out is not persuasive of the worth of the debts. Subsequent events may have changed Carroll Plastics' financial situation. For example, Carroll may have decided that as the sole owner of Carroll Plastics additional investment was worthwhile. Based on the record, it is not apparent that petitioner compromised a debt which, at the time, had a value greater than the amount received in the compromise. Accordingly, on the date of compromise the excess indebtedness ($49,143.75) was wholly worthless. Respondent has failed to carry his burden of proof. Decision will be entered *507 for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the taxable years in issue.↩
2. Fitch v. Commissioner,T.C. Memo. 1960-268↩.
3. Petitioner's 1967 salary from Carroll Plastics was zero percent of his gross income, approximately $46,000. His 1968 salary was $7,500 but his gross income is not in the record. His 1969 salary was 93 percent of his gross income, $9,300.↩